693 So.2d 951 (1997)
William Gregory THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 84256.
Supreme Court of Florida.
March 20, 1997.
Rehearing Denied May 15, 1997.
Nancy Daniels, Public Defender, Second Judicial Circuit, Tallahassee, and Steven L. Seliger of Garcia and Seliger, Quincy, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on William Gregory Thomas. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
Thomas planned the kidnapping and murder of his wife, Rachel, in order to avoid paying his part of a settlement agreement in their pending divorce. Thomas and a friend, Douglas Schraud, went to Rachel's house, September 12, 1991, the day before a substantial payment was due, and Thomas beat, bound, and gagged Rachel. When Rachel tried to escape by hopping outside, Thomas knocked her to the ground and dragged her back inside by her hair. He then put her in the trunk of her car and drove off. She was never seen again.
Thomas was charged with first-degree murder, burglary and kidnapping. The State presented numerous witnesses to whom he had made incriminating statements. Thomas presented no evidence during the guilt phase and was found guilty on all counts. During the penalty phase, several witnesses testified on his behalf and Thomas himself took the stand. The jury recommended death by a vote of eleven to one, and the judge imposed a sentence of death based on five aggravating circumstances and no mitigating circumstances.[1] Thomas appeals, raising nine issues.[2]
*952 Thomas first claims that the State failed to prove the corpus delicti of the crime. We disagree. This Court recently explained the theory underlying corpus delicti:
The phrase "corpus delicti" refers to proof independent of a confession that the crime charged was in fact committed. In order to prove corpus delicti in a homicide case, the state must establish: (1) the fact of death; (2) the criminal agency of another person as the cause thereof; and (3) the identity of the deceased person. Regarding the second elementthe criminal agency of anotherthe proof need not show that the defendant committed the crime.
To admit a defendant's confession, the state must prove the corpus delicti either by direct or circumstantial evidence. It is enough if the evidence tends to show that the crime was committed; proof beyond a reasonable doubt is not mandatory. To support a conviction, however, the corpus delicti must be established beyond a reasonable doubt.
Meyers v. State, No. 85,617, slip op. at 2, ___ So.2d ___, ___ [1997 WL 109219] (Fla. Mar. 13, 1997) (citations and footnote omitted).
In the present case, the State's evidence showed the following. Douglas Schraud was present when Thomas beat, bound and abducted Rachel in the trunk of her car. Later that day, Thomas met a friend at the Roosevelt Mall and the friend saw him park and abandon Rachel's car after wiping it down with a towel. Thomas's palm print was found on the hood of the car. Rachel has not been seen or heard from since. It was uncharacteristic of Rachel to miss appointments or to leave behind her family and sonshe had never even stayed out all night before. She not only missed a planned evening with a friend, she left behind her gym bag, purse, driver's license, a photograph of her son, twenty dollars in cash she had obtained only an hour before she disappeared, all her clothes, and the $750 she had in her bank account. Moreover, she disappeared the day before payday. She had given coworkers no indication she was unhappy in her job, and had never expressed to her family any desire to leave or get away from it all. Although Rachel was a neat person and kept her home immaculate, after her disappearance her garage door was left standing wide open and the door into the house from the garage was left unlocked. There were signs of a struggle in the foyer, as well as blood on the baseboard and on the vent. Blankets were missing from the garage. Witnesses testified that Thomas wore tennis shoes the evening of the murder and there was a tennis shoe print on the floor of the garage. When asked by police, however, Thomas denied owning any tennis shoes, and the next day he collected all his tennis shoes and threw them away.
Based on the foregoing, we conclude that the State introduced sufficient evidence to prove the corpus delicti of the murder and to lay the predicate for admission of Thomas's inculpatory statements. See Meyers, slip op. at 2-3, at ___ ___. We note that Thomas made many inculpatory statements and admissions.[3] The State introduced sufficient *953 evidence to show that Rachel is dead and Thomas killed her. See generally Sochor v. State, 619 So.2d 285 (Fla.), cert. denied, 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993). We find no error.
Thomas next claims that the trial court failed to address mitigating evidence in its sentencing order. We agree. This Court stated in Campbell v. State, 571 So.2d 415 (Fla.1990), that a sentencing court must "expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature." Id. at 419.
In the present case, Thomas presented several witnesses in mitigation. Ronald Haylett testified that Thomas was a good worker for Publix who showed up every day and did not cause trouble. Dorothy Locke said Thomas is a "delightful young man," who is "very loving" and good with her children. And Nancy Cabese, who met Thomas in prison, stated that she had "seen a lot of good in him." The trial court's sentencing order, however, mentions none of this, saying only that "[t]here are no other aspects of William Gregory Thomas' character or record, nor any other circumstances of the offense, which would mitigate in favor of William Gregory Thomas or his conduct in this matter." This was error, but harmless for the following reason.
In counterpoint to the relatively minor mitigation, the evidence in aggravation in this case is massiveparticularly the fact that Thomas killed his own mother to keep her from talking to police about Rachel's death. After reviewing the full record, we conclude beyond a reasonable doubt that had the trial court noted in its sentencing order each mitigating circumstance proposed by Thomas the court still would have imposed the death penalty. We find the error harmless. See, e.g., Wickham v. State, 593 So.2d 191 (Fla. 1991), cert. denied, 505 U.S. 1209, 112 S.Ct. 3003, 120 L.Ed.2d 878 (1992).
The remainder of Thomas's claims either were not preserved[4] or are without merit.[5] We affirm the convictions and sentences.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES and WELLS, JJ., concur.
HARDING and ANSTEAD, JJ., concur in conclusion only.
NOTES
[1] The court found that the following aggravating circumstances were present: Thomas had committed a prior violent felony; the murder was committed in the course of a burglary; the murder was committed for financial gain; the murder was especially heinous, atrocious, or cruel (HAC); the murder was committed in a cold, calculated, and premeditated manner (CCP).
[2] Thomas claims that the court erred in the following ways: 1) The State failed to prove the corpus delicti; 2) the sentencing order is deficient; 3) the CCP instruction was faulty; 4) the prosecutor misinformed the jury about the weighing process; 5) the court improperly informed the jury on the weighing process; 6) the HAC instruction was faulty; 7) the prosecutor made improper comments in closing; 8) the court used the felonies underlying the first-degree murder conviction as an automatic aggravator; 9) the evidence was insufficient to support the pecuniary gain aggravator.
[3] Thomas made the following statements and admissions:

He told coworker Johnny Brewer that he had "to see that Rachel disappeared" because he could not make the settlement payment.
He told coworker Joseph Stewart that Rachel was seeking custody of his son, Bennie, and that he "would prevent that by any means in his power."
He told his girlfriend, Jennifer Howe, that he had some papers for Rachel to sign and that if she refused "the family" would take care of her by whatever means were necessary.
He told Christina, his wife at the time of trial, that he would kill Rachel before she killed him.
On the day of the murder, he told Christina that "the family" had taken Rachel.
He told Christina not to worry about where Rachel was "because the Mafia had taken her deep sea fishing and chopped her up and fed her to the sharks."
He told coworker Jimmy Stewart a version of Rachel's abduction involving the Mafia and told him that he took Rachel to his house and that when he left she was dead.
He told inmate Dixon that "he had chopped the bitch in the throat" and killed her.
He told inmate Bonner that he and Schraud had forced their way into Rachel's home and "took care of Rachel." This statement was accompanied by a hand-across-thethroat motion.
He told inmate Rhiles that Rachel was "shark bait."
[4] Issues 3) through 8) were not preserved.
[5] Issue 9) is without merit.