783 So.2d 970 (2001)
Lawrence SINGLETON, Appellant,
v.
STATE of Florida, Appellee.
No. SC93035.
Supreme Court of Florida.
February 15, 2001.
Rehearing Denied April 26, 2001.
*971 James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Robert A Butterworth, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing a death sentence upon Lawrence Singleton. We have jurisdiction. Art. V, § 3(b)(1), *972 Fla. Const. For the following reasons, we affirm the conviction and death sentence.

I. FACTS
Singleton was convicted of first-degree murder for the February 19, 1997, stabbing death of Roxanne Hayes. The evidence at trial revealed that Hayes was stabbed seven times, the fatal wound penetrating the right ventricle of her heart, causing her to bleed to death.
At trial the State presented the testimony of Paul Hitson, an eyewitness. Hitson, who had been hired to paint Singleton's house, testified that after knocking on Singleton's door and calling his name, he walked into Singleton's house and heard a muffled, gurgling sound for help. Hitson stated that as he was walking through the house he heard another cry for help and, upon entering the doorway of the family room, saw Singleton hunched over a body on the couch. Hitson left the house through the carport door and told his uncle, who was waiting outside, what he had seen. Hitson then ran to the front of the house and looked through the window on the front door. Hitson kicked the door and in response heard another weak cry for help. Hitson saw Hayes lying on the couch, not moving, with Singleton standing over her with his hand around her neck. Hitson testified that he then saw Singleton make three downward pounding motions on Hayes chest and neck area, accompanied by bone-crushing sounds. Hitson then went with his uncle to telephone for help.
Dr. Miller, an associate medical examiner of Hillsborough County, also testified for the State. Miller, who had examined Hayes's body, testified that Hayes had six stab wounds on her trunk and a seventh on her face, which were consistent with the attacker being face to face, bent over the victim. Miller also testified that Hayes had several very deep defensive wounds on her hands, including one that almost severed the index and middle fingers on her left hand. Miller estimated that Hayes would have been conscious at least four or five minutes after sustaining the fatal wound to her heart.
Singleton testified in his own defense. Singleton testified that on the day of the murder, after consuming prescription medication, antihistamines and alcohol, he picked Hayes up and drove her to his house to perform oral sex. Singleton stated that, after Hayes had eaten and they had engaged in sex, Hayes grabbed his wallet as he was attempting to give her money for cab fare home. Singleton stated that a struggle ensued, and after he took the wallet back from Hayes, she picked up a knife Singleton kept by the couch and swung it at him. Singleton then testified that during the altercation, in which he attempted to disarm Hayes, she sustained the seven stab wounds that ultimately caused her death.
The jury returned a guilty verdict for first-degree murder. After the penalty phase of the trial, the jury recommended a sentence of death by a vote of ten to two. The trial court agreed and sentenced Singleton to death.
The trial court found the existence of two aggravators: (1) Singleton had previously been convicted of a felony involving the use of violence to the person;[1] and (2) the murder was especially heinous, atrocious, or cruel (HAC).[2] The trial court found the following statutory mitigators: (1) the murder was committed while Singleton was under the influence of extreme mental or emotional disturbance;[3] (2) Singleton's *973 capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;[4] and (3) Singleton's age at the time of the offense was sixty-nine.[5] The court found nonstatutory mitigation as follows: (1) the prior violent crime was committed in 1978, when Singleton was fifty-one years old; (2) the intent to kill was formed during an argument or disagreement with the victim; (3) since his release on parole in 1987, Singleton had never been accused of or arrested for any offense except petit theft; (4) Singleton was under the influence of alcohol and other possible medication at the time of the offense; (5) Singleton suffered from alcoholism; (6) Singleton suffered from mild dementia; (7) Singleton had previously attempted suicide; (8) Singleton had served honorably in the armed forces; and (9) Singleton was a model prisoner in California from 1979 to 1987.

II. ISSUES
In this appeal, Singleton raises a total of eight claims.[6] Singleton first claims that the trial court denied Singleton his right to an impartial jury by denying cause challenges to three jurors who had knowledge of Singleton's prior offenses and one other juror who stated that he did not believe that alcohol was an excuse for any crime.
A juror should be excused for cause if there is any reasonable doubt about the juror's ability to render an impartial verdict. See Turner v. State, 645 So.2d 444, 447 (Fla.1994). On appeal, a trial court's ruling on a cause challenge will be sustained absent an abuse of discretion. See Castro v. State, 644 So.2d 987, 990 (Fla.1994). Discretion is abused "only where no reasonable [person] would take the view adopted by the trial court." Huff v. State, 569 So.2d 1247, 1249 (Fla.1990). Our review of the record indicates that the trial judge did not abuse his discretion in denying cause challenges for these jurors.
To ensure that the jury was fair and impartial in this highly publicized case, the trial judge, in accord with our decision in Boggs v. State, 667 So.2d 765 (Fla.1996), conducted individual voir dire to determine each juror's exposure to pretrial publicity and their knowledge of Singleton's prior crimes and any resulting bias.[7] Although this Court has not held that a juror's knowledge of a case or of a defendant's prior crimes necessarily requires that juror to be excused for cause, the trial judge in this case excused over seventy jurors who indicated that they knew the specific facts about Singleton's prior offenses, regardless of whether those jurors stated that they could disregard that knowledge and reach a verdict that was based solely on the evidence at trial. Singleton argues that prospective jurors Crawford, Meyer, and Crumpton should have been excused *974 for cause as well, based on their knowledge of Singleton's prior crimes. The trial judge, however, did not abuse his discretion in refusing to do so.
In response to questions concerning a newscast he viewed almost a year before the voir dire, prospective juror Crawford indicated that he remembered that Singleton "was being held possibly for having committed this murder" and "some statement to the effect that he had a crime in his past basically." Crawford stated he could not remember any details of the crime, including whether or not Singleton had been convicted of the prior crime or had just been accused. Crawford stated that he could base his verdict solely on the evidence presented and that Singleton was presumed innocent.
Prospective juror Meyer indicated that he had seen four or five news reports about the story five or six months prior to the voir dire. Meyer indicated that he remembered something about the dismemberment of the arms of a minor girl but did not know whether that was something in Singleton's past or part of the current case and did not know if Singleton had committed the act or had just been accused of doing it. Meyer also stated that he could base his verdict solely on the evidence presented, that he had no fixed opinion as to Singleton's guilt or innocence, and that Singleton was presumed innocent.
Prospective juror Crumpton stated that a month before the voir dire he read a newspaper article that stated that Singleton had "killed somebody and chopped off her arms or something." Although Crumpton first indicated that those were the facts of another case, later in the voir dire he indicated that he was referring to the facts of this case. Crumpton also stated that he could put aside any information he may have heard and decide this case based solely on the evidence presented.
The record reflects that these jurors had not formed any opinion about Singleton's case. All three indicated that they could base their verdicts solely on the evidence presented and stated that Singleton was presumed innocent. Although Meyer and Crumpton recalled some vague details of Singleton's prior crime, considering the remoteness in time that the jurors saw the news reports, their unequivocal responses to the Court that they would disregard anything they may have heard and the fact that their recollection of the details of the news reports was so vague, there was no error in denying Singleton's cause challenge for these three jurors. As this Court recently reiterated in Kearse v. State, 770 So.2d 1119 (Fla.2000):
In reviewing a claim of error such as this, we have recognized that the trial court has a unique vantage point in the determination of juror bias. The trial court is able to see the jurors' voir dire responses and make observations which simply cannot be discerned from an appellate record.
Id. at 1128 (quoting Smith v. State, 699 So.2d 629, 635-36 (Fla.1997)). Here we cannot say, based on our review of the record, that the trial judge abused his discretion with regards to these jurors.
Singleton also argues that prospective juror Belcher should have been excused for cause because he stated during voir dire that he did not "feel that alcohol is an excuse in any kind of crime." Singleton argues that this statement demonstrated that Belcher could not be fair and impartial in considering the defense's argument that Singleton was too intoxicated to premeditate Hayes's murder. Belcher's statement, however, was made in the context of a confusing dialogue between defense counsel and other jurors, and it is not clear from a reading of the record whether Belcher was responding to defense *975 counsel's question or another juror's recharacterization of it when he made his statement. The voir dire was as follows:
MS. MENADIER: Okay. And I know I was struggling to kind of formulate my question. So part of this is probably my fault. You have to determine in this case or any other homicide case the person's mental state, whether that person had a premeditated intent to kill, whether the killing occurred out of hatred, ill will or spite which is a long way of saying or maybe a short way of, in essence, describing second degree murder, whether it occurred from some sort of intentional act that the act was intentional, but it wasn't intended to cause the death or some sort of what we call culpable negligence.
Okay. What we kind of think a lot of as an accident, but not quite. Okay. Those are a very, very brief description of the different types of mental states that Judge Mitcham will have to at the end instruct you on. And my question is in considering what Mr. Singleton's mental state was ifif you all determine that, in fact, he did commit the act, what his mental state was. And you also have to considerwould you be able to consider consumption of alcohol, intoxication as effecting that mental state and factor that into your decision?
. . . .
MS. MENADIER: I'm taking it that you're looking a little quizzical on your face, too. And I may be misreading your body language also, but
MR. FAVORS: I would take that into consideration, but I would not base my decision on that itself, not totally.
MS. MENADIER: Okay. What do you mean by taking it into consideration but not basing your consideration on it?
MR. FAVORS: Alcoholwe all know it does have an effect on people. But the decision you make to do a certain act while you're under the influence of alcohol is still your responsibility.
. . . .
MR. PEARSON: (Answering same question.) What you're saying is if someone drinks, therefore should they be less responsible for their actions. Is that what you're saying?
MS. MENADIER: No. I'm asking you if it's something that you would be able to take into account in determining a person's mental state, premeditation, the other things that we talked about.
MR. PEARSON: But indirectly you're asking that question; is that correct? I guess I'm confused.
. . . .
MR. PEARSON: Are you saying that because a person consumes alcohol, one should look at the fact that they consumed alcohol and therefore leniency should be given to them because of their current mental state because they have alcohol in their system? Is that what you're saying?
MS. MENADIER: It's not really what I'm saying. What I'm trying to find out is whether or not somebody's consumption of alcohol is something that you would be able to consider and factor in making that determination of that person's mental state. You're shaking your head no. Are you thinking?
MR. PEARSON: No. I mean consider it? Again, I'm still trying to understand your question.
. . . .
MR. BELCHER: I don't feel that alcohol is an excuse in any kind of crime no matter what it is.
This exchange demonstrates the reason that this Court has recognized that a trial judge is in a "far superior position to properly evaluate the responses to the questions propounded to the jurors," Cook *976 v. State, 542 So.2d 964, 969 (Fla.1989), and that a ruling on a cause challenge will be sustained on appeal absent an abuse of discretion. See Castro, 644 So.2d at 990. We do not find that the trial judge abused his discretion with regard to juror Belcher. In reaching this conclusion we consider the context in which the statement at issue was made and the fact that later during voir dire Belcher indicated that he would have no difficulty in following the law and agreed that he would be able to take Singleton's intoxication level into account in determining the appropriate sentence.
Singleton's second argument on appeal is that the admission of a videotape of Singleton wearing jail clothing and handcuffs while in custody on the night of his arrest violated his right to be presumed innocent. The videotape lasted approximately one-and-a-half minutes and contained the following:
REPORTER: Who is she? Why did you kill her?
THE DEFENDANT: I have no comment.
REPORTER: How did you kill her?
THE DEFENDANT: I have no comment.
REPORTER: How did all this start?
THE DEFENDANT: I have no comment.
[Pause]
THE DEFENDANT: This time I did it.
REPORTER: You say you did do it, sir?
THE DEFENDANT: Yeah, I done it.
[PAUSE]
REPORTER: Who is she?
THE DEFENDANT: What? Never mind.
REPORTER: Is she your girlfriend or
THE DEFENDANT: Yeah, a girlfriend.
REPORTER: Why did you do it, sir? Did she upset you?
THE DEFENDANT: [Unintelligible] You got that much.
Because defense counsel did not argue as grounds for his objection that the admission of the videotape violated Singleton's right to be presumed innocent, this issue is not properly preserved for review. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982). However, even if this argument had been preserved by a proper objection, we would find no error in the admission of the videotape. The brief exposure to Singleton in a prison uniform while handcuffed does not outweigh the probative value of Singleton's admission in the video that he killed the victim. We dealt with a similar issue in Alston v. State, 723 So.2d 148, 156 (Fla.1998), and, as here, found that the admission of a videotape was relevant and that the trial court did not abuse its discretion in not barring the tape on the basis of section 90.403, Florida Statutes (1995).
Next, we find no merit to Singleton's related argument that the cumulative effect of the videotape together with three jurors' inadvertent sighting of Singleton as he was being transported resulted in reversible error. Singleton correctly states in his brief to this Court that jurors' brief glances of him as he was being transported in prison garb and shackles, standing alone, were not so prejudicial as to require a mistrial. See Anderson v. State, 574 So.2d 87, 93-94 (Fla.1991); Heiney v. State, 447 So.2d 210, 214 (Fla.1984). As set forth above, the trial court did not err in admitting the videotape. Thus, Singleton is not entitled to relief on the remaining issue.
Singleton's next issue on appeal is that the trial judge erred by failing to evaluate each mitigating factor proposed *977 by the defense and by failing to explain how it weighed the mitigating factors it found to be established, in violation of Campbell v. State, 571 So.2d 415 (Fla. 1990).[8] In Campbell, this Court stated that a sentencing court must "expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature." Id. at 419 (footnote omitted). While Singleton claims that several factors were not discussed, it is clear that the sentencing judge reasonably grouped several mitigating factors together and properly considered them.[9]See Reaves v. State, 639 So.2d 1, 6 (Fla.1994). We find the failure of the trial judge to specifically address the remaining claims to be harmless. See Thomas v. State, 693 So.2d 951, 953 (Fla.1997). It is beyond a reasonable doubt that even if the remaining mitigators not discussed by the trial judge were found to exist, the mitigators would not have outweighed the aggravation in this case. See Thomas, 693 So.2d at 953. The mitigators not discussed by the trial judge, which included Singleton's courtroom behavior, his behavior on parole, and his alleged remorse and cooperation with police, even when combined with other mitigation in the record, would not outweigh the two weighty aggravators found to exist by the trial judge. See Ferrell v. State, 680 So.2d 390, 391 (Fla.1996); Cardona v. State, 641 So.2d 361 (Fla.1994). Thus, we find no error.
Singleton's fourth argument on appeal is that the trial court erred by directing that Mary Vincent, the victim of Singleton's prior violent felony, raise her right hand to be sworn and to point to Singleton to identify him. Singleton admits that Vincent's testimony was relevant to explain the circumstances of the prior violent felony but argues that the use of Vincent's *978 prosthetics to be sworn in and to identify him was unduly prejudicial. We find no merit in this argument.
The State may present the victim of a prior violent crime in the penalty phase of a capital trial. See Stewart v. State, 558 So.2d 416, 419 (Fla.1990). We have cautioned against making the prior violent felony the focus of the penalty phase, see Finney v. State, 660 So.2d 674, 684 (Fla.1995), but this does not mean that the State must alter the evidence. In an instance such as this, in which the victim of the prior violent felony has lost a body part, that fact does not prevent the State from presenting the prior victim as a witness. Nor do we conclude that the probative value of Vincent's testimony was outweighed by any prejudice that may have resulted from Vincent's swearing in and subsequent identification of Singleton.
The value of the testimony from victims of prior crimes is that it assists the jury in "evaluating the character of the defendant and the circumstances of the crime so that the jury can make an informed recommendation as to the appropriate sentence." Rhodes v. State, 547 So.2d 1201, 1204 (Fla. 1989). The circumstances of Singleton's prior crime involved chopping off the arms of a young girl. While a commitment form was admitted showing that Singleton had been convicted of rape, oral copulation by force, kidnapping, sodomy, attempted murder and "mayhem," it did not clearly set out the circumstances surrounding Singleton's prior crime. The testimony and resultant display of the prosthetics were probative of this issue. Unlike the witness in Thomas v. State, 748 So.2d 970 (Fla.1999), Vincent did not do anything extraordinary in identifying Singleton and did not have an emotional outburst when testifying. Singleton admits that Vincent did not show any more of her prosthetics than was required to be sworn and point to Singleton, and he does not otherwise challenge the presentation or content of her testimony. Thus, we find no error.
In a related argument Singleton claims that the trial judge's intervention in swearing Vincent as a witness and asking her to identify her attacker violated his right to an impartial judge. Singleton argues that the judge's actions implied that Vincent's testimony was somehow more significant than other testimony presented. Because defense counsel did not raise this argument below, it is not cognizable on appeal and is procedurally barred. See Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982). Even if it had been presented, on the basis of the totality of the record in this case we find this contention to be without merit.
We also find Singleton's fifth claim, that the trial court erred in admitting evidence of Singleton's lack of remorse for his prior crimes, to be without merit. Douglas Filangeri, Singleton's parole officer after his release from prison in 1987, gave testimony concerning Singleton's behavior on parole. Filangeri testified that while he would have to ask Singleton to refrain from "certain areas of conversation" and that Singleton had his "areas of sensitivity," there was never any reason for generating a violation report, that Singleton never lost good-credit time, and that Singleton was never angry or hostile. On cross-examination the State questioned Filangeri concerning these areas of conversation and Singleton's sensitivity. In response, Filangeri testified that Singleton would attempt to discuss how Mary Vincent offered him sex for money and that his conviction was improper. Singleton correctly points out that lack of remorse cannot be considered an aggravating circumstance. However, this Court has held that lack of remorse is admissible to rebut evidence of remorse or other mitigation such as rehabilitation. See Derrick *979 v. State, 581 So.2d 31, 36 (Fla.1991). On direct examination, defense counsel attempted to portray Singleton as a model parolee who was never hostile or angry. The State's questioning of Filangeri was relevant to rebut the mitigation offered as to Singleton's demeanor and behavior as a parolee. See id. Thus, we find no error in the admission of this testimony. Id.
Singleton next argues that the trial court improperly considered two additional aggravating factors: (1) that the murder was an unprovoked senseless killing of the mother of two children without cause, provocation, or justification; and (2) that the killing exemplified that we are living in times worse than Sodom and Gomorrah. Singleton contends that the evidence did not support the finding that Hayes was the mother of two children and that it was improper for the court to consider religious philosophy in determining the proper sentence.
This claim has no merit. Although extraneous statements were made at the end of the sentencing order, the plain language of the order also stated that no aggravators were considered other than Singleton's prior violent felony and HAC. See Blanco v. State, 706 So.2d 7 (Fla.1997). Stating that Hayes was a mother, although the judge misstated the number of children, does not indicate that he considered an improper aggravator but is merely a fact of the case. Id. While we have stated that biblical references should not be used, in this case the present reference is not reversible error. See Lawrence v. State, 691 So.2d 1068, 1074 (Fla.1997). The jury was not exposed to the lone biblical reference of "Sodom and Gomorrah" prior to making its sentencing recommendation, and the order stated that the judge did not consider any other aggravators than the two set forth above. Thus, we find that any error was harmless.
Singleton's next claim is that the trial court erred by allowing Dr. Barbara Stein, the State's expert psychiatrist, to testify that Singleton's inconsistent statements to the police and jail officials indicated that he had the capacity to deceive. Singleton claims that it was an improper opinion on his credibility.
Dr. Elizabeth McMahon, a defense expert, testified during the penalty phase that Singleton was suffering from dementia on the night of the offense. On cross-examination, McMahon admitted that if Singleton had lied to police on the night of the murder and was aware that he had lied, it would have indicated that Singleton knew the wrongfulness of his conduct and would be inconsistent with dementia. Thus, Stein's testimony concerning Singleton's ability to deceive on the night of the offense was relevant to rebut the mitigating factors proposed and was not an improper comment on Singleton's testimony at trial.
Lastly, Singleton claims that his sentence of death is not proportional. The purpose of our proportionality review is not to evaluate the trial court's weighing of aggravating and mitigating circumstances but to compare the case under review with all past capital cases to determine whether death is the appropriate punishment. See Bates v. State, 750 So.2d 6, 12 (Fla.1999).
Singleton claims that this case is similar to Kramer v. State, 619 So.2d 274 (Fla.1993), in which this Court imposed a life sentence. This Court in Kramer, however, characterized the murder as nothing more than a "spontaneous fight ... between a disturbed alcoholic and a man who was legally drunk." Id. at 278. Here, however, the evidence produced at trial indicates that Singleton brutally stabbed a supine Hayes as she was calling for help. We conclude that Singleton's death sentence for the murder of Hayes is proportionate *980 when compared to other capital cases. See Spencer v. State, 691 So.2d 1062 (Fla.1996); Lemon v. State, 456 So.2d 885 (Fla.1984). Accordingly, we affirm Singleton's conviction for first-degree murder and sentence of death.
It is so ordered.
WELLS, C.J., and HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
SHAW and ANSTEAD, JJ., concur in result only.
NOTES
[1] See § 921.141(5)(b), Fla. Stat. (1999).
[2] See § 921.141(5)(h), Fla. Stat. (1999).
[3] See § 921.141(6)(b), Fla. Stat. (1999).
[4] See § 921.141(6)(f), Fla. Stat. (1999).
[5] See § 921.141(6)(g), Fla. Stat. (1999).
[6] Singleton claims that: (1) the trial court erred in denying Singleton's cause challenges for four jurors; (2) the trial court erred in admitting a videotape of Singleton wearing jail clothing and handcuffs while in custody the night of his arrest; (3) the trial judge failed to evaluate each mitigating factor proposed by the defense and to explain how he weighed the mitigating factors found to be established; (4) the trial court erred by directing a witness wearing prosthetics to raise her right hand to be sworn and to point to Singleton; (5) the trial court erred in admitting evidence of Singleton's lack of remorse for prior crimes; (6) the trial court erred in finding and considering nonstatutory aggravating circumstances; (7) the trial court erred by allowing a State expert to testify about Singleton's credibility; and (8) the death sentence is disproportionate.
[7] Singleton's prior crimes involved convictions for the 1979 kidnapping, rape, and attempted murder of fifteen-year old Mary Vincent during which Singleton cut off Vincent's arms.
[8] Singleton argues that the court failed to expressly evaluate the following proposed mitigators: (1) Singleton was so lonely that he paid a prostitute more for companionship than sex; (2) Singleton did not flee after the offense; (3) Singleton did not resist the police and cooperated with their investigation; (4) instead of portraying Hayes as evil and foul-mouthed, Singleton testified she was a lovely person; (5) Singleton showed remorse; (6) Singleton did not plan to commit the offense in advance; (7) Singleton served in a combat zone during the Korean War; (8) Singleton completed high school and received his G.E.D. while in prison; (9) Singleton had an excellent academic record in both high school and college courses taken in prison; (10) Singleton was an excellent teacher of other inmates while in prison; (11) Singleton was a model parolee in 1987 and 1988; (12) Singleton dealt with the rules and stress of a difficult parole situation with respect and intelligence; (13) Singleton was a productive member of society while employed as a merchant seaman between 1945 and 1978; (14) Singleton demonstrated appropriate courtroom behavior; (15) Singleton demonstrated appropriate behavior while incarcerated awaiting trial; (16) Singleton has the capacity to form good relationships with friends and neighbors; (17) society can be protected by a sentence of life without parole; (18) Singleton will not be a danger to other inmates or prison personnel; (19) Singleton has a daughter who is a nurse; (20) Singleton is a sad, lonely old man whose only future is life in prison and contemplation of a ruined life; and (21) the totality of the circumstances do not set this murder apart from the norm of other murders.
[9] The fact that Singleton did not plan to commit the offense in advance (proposed factor 6), was considered by the trial judge as indicated by his finding that the intent to kill was formed during an argument or disagreement with Hayes. The trial judge also considered Singleton's military service in mitigation (proposed factor 7), finding that Singleton had served honorably in the armed forces. Singleton's behavior and academic achievements while in prison (proposed factors 8, 9, and 10), were also considered as indicated by the trial court's finding that Singleton was a model prisoner while incarcerated in California.