CIKLIN, J.
 

 Ronald Samuels appeals multiple convictions arising from the attempted murder of his ex-wife and her husband, challenging the trial court’s refusal to excuse a potential juror for cause, the admissibility of certain evidence, and that portion of the court’s restitution order concerning medical insurance. We affirm.
 

 In October 1997, Samuels plotted to have his ex-wife, Heather Grossman, and her husband, John Grossman, killed after
 
 *415
 
 Samuels lost custody of his children following an exceedingly lengthy and highly contentious dispute. Samuels owed $51,672.82 in child support arrearages and the family court judge had ordered him to pay $18,528.98 by October 14, 1997. Samuels had a $1 million life insurance policy on Heather Grossman, at the time he planned her death.
 

 Samuels solicited the assistance of other individuals and met with them to discuss an assassination scheme. He told them he wanted his former spouse “whacked” and “taken care of’ and offered them money. He had them case the Grossmans’ workplace and home in preparation for the murder for hire.
 

 On the morning of October 14,1997, two of Samuels’ accomplices drove to the Grossmans’ workplace and followed the Grossmans when they left for lunch. At a traffic light, one of the hit men fired two high-powered rifle shots into the Gross-mans’ vehicle, striking both of them. As a result of the shooting, Heather Grossman was rendered a quadriplegic because of a bullet that tore through her neck and partially severed her spine. Meanwhile, Sam-uels attempted to establish his alibi by picking up one of his accomplices and spending the day with him.
 

 The state charged Samuels by indictment with two counts of attempted first-degree murder with a firearm, one count of shooting into an occupied vehicle, four counts of solicitation to commit first-degree murder, one count of conspiracy to commit first-degree murder, and one count of committing a felony causing bodily injury.
 

 During jury selection (in 2006 — nine years after the shooting), a potential juror, Ms. Anderson, stated that she had heard people talk about the case where she was employed as a hairdresser, saw it on the news, and read about it on the internet. She did not remember very much about the incident and could not remember anything about the case other than what the trial judge had read to the venire during the jury selection process. When the court asked if she would be able to set aside everything that she might know about the case and decide it only on the evidence presented during the trial, she responded, “I would do my best, yes.” When asked if she had formed an opinion, she responded that she had not formed a “complete” opinion. When the court pressed her as to any opinion she might have, Ms. Anderson stated that if the defendant did the crime, he should face punitive consequences. The court then asked whether she had come to a partial decision, and she said, “I don’t think so.” She confirmed that she could decide the case based only on the evidence presented at trial, her evaluation of that evidence, the credibility of the witnesses, and whether the state proved its case.
 

 The state then questioned Ms. Anderson and elicited statements that she heard about the incident right after it happened in 1997 and had not seen or heard anything since then. Ms. Anderson stated she had not formed an opinion on the defendant’s guilt or innocence. She repeated that if he did the crime, he needed to pay for it. When asked whether she could follow the law and hold the state to its burden to prove the case by what she saw and heard in the courtroom, she answered in the affirmative.
 

 Upon further questioning by the defense counsel, Ms. Anderson again stated that she had not formed an opinion with regard to Samuels. She reiterated that if he did the crime, he should be punished. Samu-els sought to strike Ms. Anderson, asserting that she equivocated in her answers to questions about partiality and asserted that she had already reached a partial
 
 *416
 
 decision about the case. The court denied the challenge for cause.
 

 During its case in chief, the state presented vast testimony from the three individuals who schemed with Samuels to kill the Grossmans. In detail, each accomplice described how Samuels masterminded the hit.
 

 Over defense objection, the trial court admitted into evidence certain documents found at Samuels’ home during a police search. These items included forged identification documents in the name of Thomas Jordan such as tax returns, checkbooks, credit reports, a passport, and a death certificate. The court permitted the introduction of this evidence because, the court found, it corroborated testimony of an accomplice who saw some of the documentation in Samuels’ possession when the two discussed fleeing to Venezuela.
 

 Over further defense objection, the court admitted documents showing that Samuels had hidden assets in various offshore accounts in the Cayman Islands and elsewhere, under the name of other persons. The trial court also overrode defense objections and permitted the introduction of documents and testimony which exposed the explosively combative litigation regarding child custody and support between Samuels and Heather Grossman and Sam-uels’ deceit during that litigation. The court reasoned that this evidence was admissible because it was inextricably intertwined with the state’s theory as to motive.
 

 Samuels testified in his defense that he and Heather Grossman divorced in 1994. He admitted he sold his car dealership in 1995 for over $3 million and put the money in the Cayman Islands to conceal it from the divorce judge and to put it beyond the reach of his former wife. He admitted that he refused to pay child support despite having the financial ability to do so. Samuels denied any involvement in the crimes but admitted that on the day of the shooting, he called his lawyer to file an emergency motion for custody. He denied meeting with his alleged accomplices and denied giving them money to kill his former wife.
 

 The jury convicted Samuels of attempted-first degree murder with a firearm of Heather Grossman (count 1); attempted second-degree murder with a firearm of John Grossman, a lesser included offense (count 2); shooting into an occupied vehicle (count 3); three counts of solicitation to commit first-degree murder (counts 5-7); conspiracy to commit first-degree murder (count 8); and committing a felony causing bodily injury (count 9). Samuels was acquitted of one solicitation charge (count 4).
 

 The court sentenced Samuels to life in prison for count 1, thirty years for count 2 to be served consecutively to count 1, fifteen years for count 3, thirty years for counts 5, 6, and 7 to be served consecutively to count 2, and thirty years for count 8. The trial court ordered Samuels to pay restitution, including $32,927 for medical insurance premiums from October 2004 through December 2007. Samuels appeals.
 

 Denial of Juror Challenge
 

 An appellate court reviews a ruling on a cause challenge for abuse of discretion.
 
 Singleton v. State,
 
 783 So.2d 970, 973 (Fla.2001);
 
 Carratelli v. State,
 
 832 So.2d 850, 854 (Fla. 4th DCA 2002). “A juror should be excused for cause if there is any reasonable doubt about the juror’s ability to render an impartial verdict.”
 
 Carratelli,
 
 832 So.2d at 854 (quoting
 
 Singleton,
 
 783 So.2d at 973). A close case involving a challenge to the impartiality of a potential juror should be resolved in favor of excusing the juror rather than leaving doubt as to her impartiality.
 
 Id.
 

 
 *417
 
 Samuels relies on
 
 Club West, Inc. v. Tropigas of Florida, Inc.,
 
 514 So.2d 426 (Fla. 3d DCA 1987), where the Third District found the trial court abused its discretion in denying a motion to excuse a potential juror for cause. The prospective juror acknowledged that she was uncertain whether she could be impartial because she had made a large profit from stock she owned in the defendant company and admitted that she might be starting with one strike against the plaintiff. Although she later indicated that she could be impartial, because of her equivocal answers, serious doubt remained concerning her ability to be impartial.
 

 Club West
 
 is distinguishable from the instant case. Ms. Anderson had no relationship with anyone connected with the prosecution of Samuels. She never indicated that she was uncertain whether she could be impartial, and nothing she said indicated that she would start the case, as in
 
 Club West,
 
 predisposed against Samu-els. While Ms. Anderson heard something about the case nine years earlier, she had no recollection of anything that she had heard other than what was stated during jury selection. As no reasonable doubt existed as to Ms. Anderson’s ability to render an impartial verdict, the trial court did not abuse its discretion in denying the challenge for cause.
 

 Admissibility of Evidence
 

 Samuels contends that the trial court erred in admitting evidence of other crimes, wrongs, and acts by him, because the prejudice outweighed its probative value and because such evidence became a feature of the trial.
 

 The admissibility of collateral crime evidence is within the discretion of the trial court as limited by the rules of evidence.
 
 LaMarca v. State,
 
 785 So.2d 1209, 1212 (Fla.2001);
 
 Nardone v. State,
 
 798 So.2d 870, 874 (Fla. 4th DCA 2001). Section 90.404(2)(a), Florida Statutes (2006), provides:
 

 Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
 

 “[E]vidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged,” is admissible as “a relevant and inseparable part of the act which is in issue.”
 
 Griffin v. State,
 
 639 So.2d 966, 968 (Fla.1994) (citation omitted). However, even “[rjelevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. (2006).
 

 The trial court correctly permitted the introduction of evidence that Samuels possessed documents in the name of Thomas Jordan, including a passport. The documents were relevant to show consciousness of guilt because Samuels was considering and discussing a plan to flee.
 
 See Straight v. State,
 
 397 So.2d 903, 908 (Fla.1981) (“When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance”).
 

 Evidence of hidden assets in the Cayman Islands and in the name of others was relevant to show that Samuels had assets which he was hiding to avoid child
 
 *418
 
 support obligations. They were relevant to the state’s theory of the case that Samu-els wanted his ex-wife dead so that he would not have to pay child support. The documents were introduced to prove motive and not to prove Samuels’ bad character or propensity to attempt to commit crimes.
 

 Documents from the child custody case were relevant to the state’s theory that the shootings were the culmination of a litigious battle over child custody and child support. The documents were inextricably intertwined with the state’s case in showing motive. The documents were not more prejudicial than probative, nor were they improper character evidence as the majority consisted of Samuels’ own statements.
 

 Samuels argues that the impermissible collateral crime evidence became a feature of the trial, citing
 
 Bush v. State,
 
 690 So.2d 670 (Fla. 1st DCA 1997). In
 
 Bush,
 
 the defendant was on trial for grand theft, but had other stolen property not related to the charged offense in her home. The First District reversed her conviction, because the collateral crime evidence became an overwhelming feature of the trial. It explained that “[a] similar offense becomes a feature instead of an incident of the trial on the charged offense where it can be said that the similar fact evidence has so overwhelmed the evidence of the charged crime as to be considered an impermissible attack on the defendant’s character or propensity to commit crimes.”
 
 Id.
 
 at 673
 

 In contrast to
 
 Bush
 
 where the prosecutor attempted to prove the defendant’s guilt by arguing that because she had other stolen property in her house, she was guilty of the offense for which she was on trial, here the prosecutor presented no such argument. Most importantly, the documents did not become a feature of the trial.
 

 Even if the court did err by admitting any of the subject documents, any error is harmless, as there is no reasonable possibility that their admission contributed to the conviction.
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986). Three of Samuels’ accomplices presented exhaustive testimony pointing to Samuels as the originator, orchestrator, and principal in the attempted murders of the Grossmans. He solicited their assistance to have the Grossmans killed so that he would avoid paying child support, regain custody of his children, and receive $1 million from a life insurance policy.
 

 Restitution
 

 Because the trial court’s order of restitution as to the cost of medical insurance was contemplated and permitted by section 775.089, Florida Statutes (2007), we affirm.
 

 Affirmed.
 

 POLEN and HAZOURI, JJ., concur.