MAKAR, J.,
concurring with opinion.
When religious references, or appeals to religion, are made by participants in the sentencing phase of a criminal case, it places the trial judge in a difficult position; he can ignore, acknowledge, or nimbly skirt the matter. If he engages the subject, making a religiously-themed or religiously-based comment, it opens the door to criticism that the sentence ultimately imposed was due to an improper factor. Few academic articles[1] discuss the topic, *443 each reflecting differing views on what is appropriate or what violates constitutional norms.[2] To similar effect are the relatively few court decisions outside of Florida.[3]
The same appears true in Florida. Our supreme court has discussed the subject, but only briefly, creating no bright line rule. In a capital case, it was presented with a trial judge’s written sentencing recommendation that made a reference to “Sodom and Gomorrah.” Singleton v. State, 783 So.2d 970, 979 (Fla.2001). Because the jury had not been exposed to the reference, and because the judge’s order said he did not consider any aggravating factors other than those that were permissible, the supreme court held that the reference — if it was error — was harmless. Id. Similarly, it has applied harmless error analysis where prosecutors have made religious references in their closing arguments to juries. See Lawrence v. State, 691 So.2d 1068, 1074 (Fla.1997) (“Although we recognize that the prosecutor’s biblical reference in this case was not reversible error, we again caution prosecutors, as we did in [Bonifay v. State 680 So.2d 418 (Fla.1996) ], that arguments invoking religion can easily cross the boundary of proper argument and become prejudicial.”).
Thus, it appears that religious references by trial judges in the sentencing context — though potentially risky — are not per se impermissible; they become problematic, however, if they are used — or reasonably appear to be used — as the basis for the sentence itself. See, e.g., Nawaz, 28 So.3d at 125 (citing United States v. Jacobson, 15 F.3d 19, 23 (2d Cir.1994), for proposition that “reference to national origin during sentencing ‘is permissible, so long as it does not become the basis for determining the sentence.’ ”) (citations omitted). The “Constitution, of course, does not require a person to surrender his or her religious beliefs upon the assumption of judicial office,” Bakker, 925 F.2d at *444 741; religious references are made with caution flags aloft.
The Fourth District has weighed in on the topic. In Scmtisteban the trial judge directly injected religion into his sentencing decision, making it clear his judgment was based on Jewish tradition. As the Fourth District noted, this “religious concept formed the very basis of calculating the sentence, not just a part.” 72 So.3d at 198. Here, it was the defendant’s father who first brought up the topic of religious faith, not the trial judge (the record is silent on the defendant’s religious views), distinguishing this case slightly from San-tisteban. The trial judge did not use religion doctrine as overtly as did the trial judge in Santisteban (nor as overtly as the trial judge used national origin in Nawaz). But it would appear to a reasonable observer that he relied, at least in part, on his disappointment in the defendant’s deviation from principles of Catholicism that would have counseled defendant to flee from the immoral conduct he pursued; this appearance matters. Nawaz, 28 So.3d at 125 (“for justice to be done, it must also appear to be done.”).[4] Particularly so given the difference between the minimum sentence of nine years and four months and the thirty years imposed.
Because it is unclear that the defendant’s sentence would be the same without consideration of defendant’s deviation from religious norms, I concur that resentencing is appropriate. Id. at 125 (“Because it is unclear whether the trial court would have imposed the same sentence absent consideration of appellant’s national origin, we must vacate appellant’s sentence and remand for resentencing before a different judge.”); see also Santisteban, 72 So.3d at 198 (reversing because court could not “say that the sentence would be the same without reliance on the impermissible ground”).

. See, e.g., Mark C. Modak-Truran, Reen-chanting the Law: The Religious Dimension of Judicial Decision Making, 53 Cath. U. L. Rev. 709 (2004) (discussing models of religionist/separationist decision-making in the context of judicial deliberations and explana *443 tions); Mark B. Greenlee, Faith On the Bench: The Role of Religious Belief in the Criminal Sentencing Decisions of Judges, 26 U. Dayton L. Rev. 1, 41 (2000). This latter article focuses solely on sentencing, but points out that "the closely related subject of arguments to juries about sentencing decisions” is discussed in two articles reflecting opposing views. Greenlee, supra, at 3 n. 7 (citing Brian C. Duffy, Bairing Foul Blows: An Argument for a Per Se Reversible-Error Rule for Prosecutors’ Use of Religious Arguments in the Sentencing Phase of Capital Cases, 50 Vand. L. Rev. 1335 (1997); Elizabeth A. Brooks, Thou Shalt Not Quote the Bible: Determining the Propriety of Attorney Use of Religious Philosophy and Themes in Oral Arguments, 33 Ga. L. Rev. 1113 (1999)).

. Compare Greenlee, supra, note 1 (arguing that religious references, within certain boundaries, should be permissible), with Sanja Zgonjanin, Quoting the Bible: The Use of Religious References in Judicial Decision-Making, 9 N.Y. City L. Rev. 31, 35 (Winter 2005) ("the use of religious references in judicial decision-making should be prohibited.”).

. See, e.g., Arnett v. Jackson 393 F.3d 681, 688 (6th Cir.2005) (trial judge’s mention of Matthew 18:5-6 did not violate defendant’s due process right because "the record does not demonstrate that the judge’s personally held religious beliefs formed "the basis of [her] sentencing decision,") (citation omitted); State v. Arnett, 88 Ohio St.3d 208, 724 N.E.2d 793, 803 (2000) (same case) (no violation of defendant’s due process right because "sentencing judge cited a religious text merely to acknowledge one of several reasons — 'one additional source’ — for assigning significant weight to a legitimate statutory sentencing factor.”); U.S. v. Bakker, 925 F.2d 728, 740-41 (4th Cir.1991) (trial judge's statement, that defendant "had no thought whatever about his victims and those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests” created “apprehension that the imposition of a lengthy prison term here may have reflected the fact that the court’s own sense of religious propriety had somehow been betrayed.”).

. See also Bakker, 925 F.2d at 741 (“Courts, however, cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it.”).