# Third District Court of Appeal

## State of Florida

Opinion filed January 24, 2018.

_____

No. 3D16-1081
Lower Tribunal No. 14-11822
_____

**Thomas Garrard Burton,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alberto Milian, Judge.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Marlon J. Weiss and Michael W. Mervine, Assistant Attorneys General, for appellee.

Before EMAS, LOGUE and LUCK, JJ.

LUCK, J.

We grant the state's unopposed motions to recall mandate and for rehearing,[1] withdraw our prior opinion dated December 13, 2017, and substitute the following in its place:

Thomas Garrard Burton murdered Carlos Figueroa during a botched robbery. A jury convicted Burton of first degree murder, and he was sentenced to a mandatory term of life in prison. Burton appeals the trial court's decision to admit a video recording of his confession where he was wearing jail clothes and handcuffs. Because the trial court did not abuse its discretion in finding that the unfair prejudice of the jury seeing Burton in jail clothes and handcuffs did not substantially outweigh the probative value of the video confession, we affirm.

*Factual Background and Procedural History*

The murder. On the morning of November 6, 2002, Carlos Figueroa was sitting outside his apartment with his son and another man, Antonio Carrero, drinking coffee, when a car pulled up. There were two people in the car – a driver and his passenger. The passenger got out of the car and asked the three men drinking coffee for directions. They gave the passenger directions and the car went on its way.

The car returned a few minutes later. This time, the passenger got out of the car holding a gun and yelled to the three men, "don't move." The passenger

---

[1] We commend the state for moving to recall the mandate and rehear the case.

2

pointed the gun at Figueroa. Figueroa had trouble getting his wallet out of his pocket, so the passenger hit Figueroa on the head with the firearm three times. The passenger then pointed the gun at Figueroa's son when, suddenly, Carrero ran away. The passenger fired three shots at the fleeing Carrero, but they all missed.

The passenger then turned to Figueroa and shot him in the stomach. After this last shot, Figueroa's son struggled with the passenger for the gun. The passenger grabbed the son's wallet and cellular telephone, left the gun, and ran for the car, which drove away.

Figueroa died six weeks later from the gunshot wound to his stomach. For over a decade, the passenger was not identified and the case was cold.

The cold case investigation. In 2013, detectives with the Miami-Dade police department had the fingerprint examiner resubmit a latent fingerprint that had been found at the crime scene to the national database to see if there was a match. The latent fingerprint matched George Covington who was interviewed in connection with the cold case. Further investigation ultimately led to Burton as a suspect in the murder. The Miami-Dade detectives met with Figueroa's son to conduct a photograph lineup. The son identified Burton as the passenger.

By then, Burton was serving a prison sentence in Pennsylvania. The Miami-Dade detectives flew to Pennsylvania to meet with Burton. Burton was willing to talk, waived his Miranda[2] rights, and gave a video recorded statement. Burton told

the detectives that his friend, Covington, picked him up in a stolen car and the two drove to Figueroa's apartment. Covington got out of the car holding a gun and Burton followed. Burton explained that there was a physical altercation between Covington and the other men. Covington asked Figueroa for the wallet. Burton took the gun and hit Figueroa on the head. Burton then gave the gun back to Covington who shot Figueroa. They fled in the car.

The trial. Burton was indicted for first degree murder. Before his trial began, Burton moved to have the jury hear the audio of his statement without the video because on the video the jury could see that he was wearing "prison garb" and "a chain around his waist hooked up to . . . his wrists." The trial court, after hearing argument from both sides and reviewing case law, denied the motion. The jury found Burton guilty after watching the video, hearing Figueroa's son identify Burton as the shooter, and learning that Burton's deoxyribonucleic acid (DNA) was on a baseball cap left at the scene of the shooting.

*Standard of Review*

"A trial court's ruling on the relevancy of evidence and whether or not the probative value is outweighed by the danger of unfair prejudice is governed by an abuse of discretion standard of review." Peede v. State, 955 So. 2d 480, 499 (Fla. 2007). "[A] large measure of discretion rests in the trial judge to determine

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

4

whether the probative value of the evidence is substantially outweighed by its prejudicial effect." Taylor v. State, 855 So. 2d 1, 22 (Fla. 2003)

*Discussion*

Burton contends the trial court abused its discretion in denying his motion to exclude the video statement because the unfair prejudice of the jury seeing him in his prison uniform and handcuffs substantially outweighed the probative value of watching (as opposed to listening to) him confess. The state responds that the jury's exposure to Burton in prison garb and handcuffs was brief, incidental, and out-of-court, and therefore not so prejudicial that it would require excluding the video confession.

"The prerequisite to the admissibility of evidence is relevancy. All evidence tending to prove or disprove a material fact is admissible, unless precluded by law." Wright v. State, 19 So. 3d 277, 291 (Fla. 2009). "Despite the fact that all relevant evidence is admissible, section 90.403 provides for the exclusion of relevant evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.'" Taylor, 855 So. 2d at 21-22 (quoting § 90.403, Fla. Stat.).

> Only when that unfair prejudice substantially outweighs the probative value of the evidence is the evidence excluded.
> ....

... In weighing the probative value against the unfair prejudice, it is proper for the court to consider the need for the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction.

State v. McClain, 525 So. 2d 420, 422 (Fla. 1988) (quoting 1 C. Ehrhardt, Florida Evidence § 403.1 at 100-03 (2d ed. 1984)).

Here, there was no dispute the video confession was relevant. Burton concedes "the statement made . . . to the police was relevant." The issue in this case was whether the probative value of the video confession was substantially outweighed by its unfair prejudice to Burton. We agree with the trial court that it was not.

Probative value. The probative value of the video confession cannot be overstated. Burton admitted he was the passenger in the car, had the gun in his hand, and hit Figueroa. Figueroa's murder was fourteen years before the trial. Even with the son's identification and the mixture of DNA on the cap left at the scene, the non-confession evidence was not overwhelming. The son's identification could reasonably be questioned given the decade between the murder and the identification of Burton in the photograph lineup. The DNA evidence only showed that Burton left his cap at the scene at some point – it did not put a gun in his hand or prove he participated in the murder.

Even so, Burton argues there was little additional probative value to be gained from playing the video version of the confession rather than an audio version where the jury could still hear what Burton said to the detectives. Burton's argument minimizes the importance the criminal justice system places on the jury seeing evidence and testimony in assessing its credibility. If Burton was right that hearing rather than seeing testimony was all that was necessary for the jury to assess credibility, then the criminal trial need be no more than reading deposition testimony, or playing prerecorded audio statements, before the jury decides the defendant's guilt or innocence. But our adversarial system isn't a test of competing affidavits because a critical part of the jury's decision-making process is watching, as well as listening, for cues to decide which evidence and testimony is reliable and credible (and which is not).

Specifically, in this case, the jury was instructed that in determining whether evidence was reliable, it "should consider how the witness has acted, as well as what they said." For a confession, like Burton's statement, the jury was instructed to treat it with "caution" and "great care," and consider the "total circumstances," before determining whether it was made knowingly and voluntarily. Watching Burton's statement was essential to the jury determining whether the confession – including the part where Burton said Covington was the shooter and not him – was reliable. The jury also had to watch how Burton acted and the circumstances of his

confession to determine whether his statement that he was involved in the murder was freely made.

Consider, for example, the statement of a hostage that he was being treated well by his captors. The audio of that statement might tell us one thing. But if the video showed the hostage with bruises and blood on him, and one of the kidnappers holding a gun to the hostage's head, that would tell us another thing. So it is here. Seeing Burton's confession, the critical piece of evidence in this case, allowed the jury to assess its reliability and voluntariness in a way the audio statement would not.

Unfair prejudice. The Florida Supreme Court has twice found no abuse of discretion where the trial court admitted video of a defendant confessing while in jail clothes and handcuffs. In Singleton v. State, 783 So. 2d 970 (Fla. 2001), the trial court admitted a one-and-a-half minute video of the defendant answering a reporter's questions "wearing jail clothing and handcuffs while in custody on the night of his arrest." Id. at 976. The Court held it was not error to admit the video because the jury's "brief exposure to [the defendant] in a prison uniform while handcuffed d[id] not outweigh the probative value of [the defendant]'s admission in the video that he killed the victim." Id.

In Alston v. State, 723 So. 2d 148 (Fla. 1998), the trial court admitted a video of the defendant answering reporters' questions during a perp walk[3] from the

police station to the jail. Id. at 152, 155-56. The defendant argued "the unfair prejudice to [him] substantially outweighed any probative value of the evidence." Id. at 156. The Florida Supreme Court concluded the trial court properly balanced the probative value and unfair prejudice, and found there was "no abuse of discretion in admitting the evidence." Id. at 157; see also Black v. State, 120 So. 3d 654, 655 (Fla. 1st DCA 2013) ("[W]e are persuaded that the trial court's decision allowing the state to present to the jury both the audio and visual portions of appellant's brief, videotaped police interview, in which appellant could be seen wearing a jail uniform, handcuffs, and leg chains, was not an abuse of the trial court's discretion.").

If anything, on the unfair-prejudice scale Burton's confession video was less prejudicial than the ones in Singleton and Alston because there was less exposure to prison garb and handcuffs. While Burton's video statement was longer than the videos in Singleton and Alston, the clothes he was wearing do not look like prison clothes. The video showed Burton wearing a navy-colored shirt with dark pants while he was sitting at a conference table. Burton was not wearing black-and-white stripes or a bright orange jumpsuit that one would typically think of as prison garb. There were no markings on Burton's clothes or inmate numbers that would

---

[3] "A 'perp walk' involves the practice of walking a suspect after an arrest through a public place to create an opportunity for the media to photograph or videotape the defendant in a highprofile case." Brown v. Pete, No. CIV.A. 12-11687-JLT, 2013 WL 141671, at *1 n.1 (D. Mass. Jan. 8, 2013)

indicate he was in prison. What Burton was wearing on the video does not result in unfair prejudice any more than a defendant confessing while wearing a dark sweatshirt and pants is prejudiced by playing his video confession for the jury.

Also, like his nondescript clothes, Burton was interviewed in a generic-looking conference room. There were no indications from the room that Burton was in jail or prison at the time of the confession. This is different and less prejudicial than the video in Alston, where the defendant was seen being "walk[ed]-over from the police station to the jail." Alston, 732 So. 2d at 155.

The video does show Burton in handcuffs but the Florida Supreme Court has said that a jury's brief view of the defendant in the courthouse with handcuffs or shackles is not so prejudicial as to require a new trial. See Hernandez v. State, 4 So. 3d 642, 658 (Fla. 2009) ("We have long held that a juror's or prospective juror's brief, inadvertent view of a defendant in shackles is not so prejudicial as to warrant a mistrial. Thus, the mere fact that a prospective juror saw the shackled ankles of a person whom he believed to be Hernandez underneath a chalkboard set up in the hallway outside the courtroom is not sufficient, standing alone, to warrant a mistrial or dismissal of the venire." (citations omitted)); Cooper v. State, 739 So. 2d 82, 85 n.8 (Fla. 1999) ("Cooper, however, was not tried in shackles, and the fact

10

that jurors may have inadvertently seen him in shackles when he was being transported to or from the courtroom does not require reversal.").

Here, the jury's exposure to the handcuffs was brief. The trial was spread out over five days, and the video confession was only sixteen minutes of those five days. The jury's exposure to Burton in handcuffs also was one step removed from a defendant shackled in court during trial. The prejudice of seeing a defendant in prison garb and handcuffs in the courthouse during a trial is far more visceral and lasting than seeing Burton interviewed by law enforcement officers years earlier in a prerecorded video. Just as in <u>Singleton</u> and <u>Alston</u>, the brief, non-courtroom view of handcuffs on a video recording was not unfair prejudice that would substantially outweigh the probative value of Burton's confession.

*Conclusion*

The trial court did not abuse the large measure of discretion given to it in determining the unfair prejudice of the video did not substantially outweigh its probative value. We affirm Burton's conviction and life sentence for first degree murder.

Affirmed.