845 So.2d 41 (2003)
Johnny Shane KORMONDY, Appellant,
v.
STATE of Florida, Appellee.
No. SC96197.
Supreme Court of Florida.
February 13, 2003.
Rehearing Denied May 2, 2003.
*44 Nancy Daniels, Public Defender, and Chet Kaufman, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Appellant.
*45 Charlie J. Crist, Jr., Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
Johnny Shane Kormondy appeals an order of the trial court sentencing him to death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons outlined in this opinion, we affirm the death sentence.

FACTUAL AND PROCEDURAL BACKGROUND
We summarized the facts of this case on Kormondy's previous direct appeal as follows:
The victim Gary McAdams was murdered, with a single gunshot wound to the back of his head, in the early morning of July 11, 1993. He and his wife, Cecilia McAdams, had returned home from Mrs. McAdams' twenty-year high-school reunion. They heard a knock at the door. When Mr. McAdams opened the door, Curtis Buffkin was there holding a gun. He forced himself into the house. He ordered the couple to get on the kitchen floor and keep their heads down. James Hazen and Johnny Kormondy then entered the house. They both had socks on their hands. The three intruders took personal valuables from the couple. The blinds were closed and phone cords disconnected.
At this point, one of the intruders took Mrs. McAdams to a bedroom in the back. He forced her to remove her dress. He then forced her to perform oral sex on him. She was being held at gun point.
Another of the intruders then entered the room. He was described as having sandy-colored hair that hung down to the collarbone. This intruder proceeded to rape Mrs. McAdams while the first intruder again forced her to perform oral sex on him.
She was taken back to the kitchen, naked, and placed with her husband. Subsequently, one of the intruders took Mrs. McAdams to the bedroom and raped her. While he was raping her, a gunshot was fired in the front of the house. Mrs. McAdams heard someone yell for "Bubba" or "Buff" and the man stopped raping her and ran from the bedroom. Mrs. McAdams then left the bedroom and was going towards the front of the house when she heard a gunshot come from the bedroom. When she arrived at the kitchen, she found her husband on the floor with blood coming from the back of his head. The medical examiner testified that Mr. McAdams' death was caused by a contact gunshot wound. This means that the barrel of the gun was held to Mr. McAdams' head.
Kormondy was married to Valerie Kormondy. They have one child. After the murder, Mrs. Kormondy asked Kormondy to leave the family home. He left and stayed with Willie Long. Kormondy told Long about the murder and admitted that he had shot Mr. McAdams. He explained, though, that the gun had gone off accidentally. Long went to the police because of the $50,000 reward for information.
Kormondy v. State, 703 So.2d 454, 456-57 (Fla.1997) (footnote omitted).
We also noted the following factual dispute between Kormondy's account of the crime and that of accomplice Hazen:
Kormondy, in this case, and Hazen, in Hazen v. State, 700 So.2d 1207 (Fla. 1997), present different factual scenarios. The trial records are inconsistent as to the locations of Hazen and Buffkin at the time of the fatal shot. During Kormondy's trial, Mrs. McAdams testified *46 that Buffkin was with her in the back of the house when she heard a shot fired. Officer Hall testified that Kormondy told him in an unrecorded statement that Buffkin fired the fatal shot and Hazen was in the back of the house with Mrs. McAdams. In a tape-recorded confession played for the jury, Kormondy again said that Buffkin shot the victim. During Hazen's trial, Buffkin testified that Kormondy killed the victim and Hazen was in the back room with Mrs. McAdams. Hazen testified that he was not present at the scene when the crimes against the McAdamses were committed.
Id. at 456 n. 1.
Kormondy, Buffkin, and Hazen were indicted on July 27, 1993, and ultimately tried separately. Buffkin was offered a plea bargain by the State in return for assistance in the prosecution of Kormondy and Hazen. On July 7, 1994, Kormondy was found guilty of first-degree murder, three counts of sexual battery with the use of a deadly weapon or physical force, burglary of a dwelling with an assault or while armed, and robbery while armed. After Kormondy's motion for judgment of acquittal as to premeditated murder and motion for a new trial were denied, a jury recommended, by a margin of eight to four, that death be imposed. The trial court ultimately imposed a sentence of death.
Kormondy raised six issues on direct appeal from his original conviction for first-degree murder and sentence of death, including: (1) whether the trial court erred by allowing Deputy Cotton to bolster Will Long's testimony about Kormondy's confession; (2) whether the motion for judgment of acquittal should have been granted since the evidence did not establish premeditation; (3) whether the trial court erred in admitting bad character evidence in the form of unconvicted crimes or nonstatutory aggravating circumstances; (4) whether the trial court erred in its treatment of aggravating circumstances; (5) whether the trial court erred in its treatment of mitigation; and (6) whether the death sentence is unconstitutional or, more specifically, disproportionate. This Court found no merit in the first two claims, but did find reversible error in the admission of evidence concerning nonstatutory aggravation and ordered a new penalty phase. See Kormondy, 703 So.2d at 463. Because a new sentencing was ordered, this Court did not address the other penalty phase issues raised by the defendant.
At resentencing, several witnesses testified on behalf of the State including the victim's friends, family, neighbors, and members of law enforcement. The defense did not put on any witnesses, relying instead on cross-examination to attack the credibility of each witness. By a vote of eight to four, the new sentencing jury recommended a sentence of death, and the trial court imposed a sentence of death. This appeal followed.
Kormondy now raises seven issues in this appeal of his resentencing: (1) whether the death penalty is constitutional and whether this sentence was proportional in this case given that (a) the codefendants, Curtis Buffkin and James Hazen, were given life sentences and (b) the death was caused by an accidental firing of the weapon; (2) whether the resentencing trial and order violated this Court's mandate from the first appeal, violated principles of law protecting the accused from having questions of ultimate fact relitigated against him, and violated Kormondy's rights by finding aggravators not tried or argued; (3) whether the trial court reversibly erred in its mitigation findings because the trial court defied this court's mandate, committed legal and factual errors, and contradicted *47 itself; (4) whether the trial court erred by allowing the State to present irrelevant, cumulative, and unduly prejudicial collateral crime and nonstatutory aggravating evidence about Kormondy's capture by a canine unit more than a week after the crime took place; (5) whether Kormondy was denied his right to cross-examine and confront state witness Cecilia McAdams concerning her ability to identify and distinguish the perpetrators; (6) whether the introduction of compound victim impact evidence, much of which was inadmissible, was fundamental error that undermined the reliability of the jury's recommendation; and (7) whether the imposition of death in the absence of notice of the aggravators sought or found, or of jury findings of the aggravators and death eligibility, offends due process and the protection against cruel and unusual punishment under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

DISCUSSION

Proportionality
Kormondy claims that his death sentence is disproportionate to the life sentences received by his coperpetrators, Curtis Buffkin, whom he designates as the leader and this Court called a prime instigator in Hazen v. State, 700 So.2d 1207 (Fla.1997), and James Hazen, whom he designates as the lead rapist. The record evidence in this case, however, refutes his claim.
Due to the uniqueness and finality of the death penalty, this Court addresses the propriety of all death sentences in a proportionality review. In deciding whether death is a proportionate penalty and to ensure uniformity in the application of this ultimate penalty, this Court independently reviews and considers all the circumstances in a case and compares those circumstances with other capital cases. See Morton v. State, 789 So.2d 324 (Fla.2001); Johnson v. State, 720 So.2d 232 (Fla.1998); Urbin v. State, 714 So.2d 411 (Fla.1998); Terry v. State, 668 So.2d 954, 965 (Fla.1996) (quoting Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990)). The death penalty is reserved for those cases where the most aggravating and the least mitigating of circumstances exist.
Kormondy first argues as a part of the proportionality argument that his sentence is disproportionate because his codefendants received life sentences. The evidence from trial and the resentencing demonstrates that Kormondy committed the homicide and is more culpable than his codefendants; therefore, his sentence of death is not disproportional on this basis. In evaluating proportionality, one of the factors that can be considered is the disparate treatment among codefendants. Such an analysis, of necessity, includes the relative culpability of each codefendant. See Shere v. Moore, 830 So.2d 56 (Fla.2002). In Kight v. State, 784 So.2d 396, 400 (Fla. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 840, 151 L.Ed.2d 719 (2002), we noted that disparate treatment is permissible where one defendant is more culpable than the others. We have consistently affirmed death sentences for the more culpable defendant where the evidence establishes he or she was the dominant force in the killing. For example, in Johnson v. State, 696 So.2d 317 (Fla.1997), the defendant similarly argued that his death sentence was disproportionate to that of a codefendant who was convicted of first-degree murder but sentenced to life imprisonment. In affirming the trial court's imposition of death on Johnson, this Court determined that he was the leader in the attack, recruited the others, obtained the weapons, *48 and arranged the necessary transportation. See also Garcia v. State, 492 So.2d 360, 368 (Fla.1986) (denying defendant's claim on direct appeal that a death sentence was disproportionate in light of codefendants' life sentences where the evidence against the defendant included an admission that he was the triggerman).
Although Kormondy, in a taped statement recorded by Investigator Allen Cotton, contended that Buffkin was the trigger man, the evidence in this case demonstrates otherwise. Mrs. McAdams, decedent's wife, who was sexually assaulted during the robbery, testified that the second person who raped her had shoulder-length hair. She also stated that while the first person who entered the home, Buffkin, was assaulting her, the shortest person (Hazen) and the long-haired one, Kormondy, were in the kitchen with her husband Gary when he was shot.
Mrs. McAdams' description of Kormondy was supported by the testimony of several other witnesses as well as inconsistencies in Kormondy's taped statement. Allen Cotton also testified that Kormondy had longer hair than the others on the day he was arrested and that Hazen was shorter than Kormondy. Terri Kilgore, the officer who pursued Kormondy on foot, also described Kormondy as having long hair at the time of his arrest. This testimony tends to place Kormondy, not Buffkin, in the kitchen with the victim and Hazen when the fatal shot was fired.
Kormondy's confession to Will Long also belies Kormondy's version of events. According to Long, he and Kormondy went to a convenience store the day after the murders and Kormondy commented, upon seeing a reward poster related to the murders, that the only way the police would find the killer would be if they were walking behind him and Long at that moment. Later that day, Kormondy admitted killing the victim and tearfully explained that it was an accident. The testimony presented at trial tends to prove that Kormondy was the triggerman, and therefore his sentence of death is not disproportionate to the life sentences received by his codefendants. See Jennings v. State, 718 So.2d 144 (Fla. 1998).
Secondly, Kormondy's sentence is proportionate to cases where similar degrees of aggravation and mitigation were present. In its order, the trial court found two aggravating factors: (1) previous conviction of a felony involving the use of threat or violence, namely, the robbery of Mr. and Mrs. McAdams or the sexual battery of Mrs. McAdams; and (2) the crime for which Kormondy was being sentenced was committed while he was engaged in or an accomplice in the commission of an attempt to commit a crime of burglary. Great weight was given both aggravators. The trial court also found no statutory mitigation, rejecting Kormondy's argument that he was a minor participant and less culpable than his accomplices. The trial court also considered and rejected as mitigating factors several nonstatutory mitigators argued by the defendant. Thus, this case is one where there are two aggravating factors and no mitigating factors.
We have upheld death in other instances where two aggravators were found, even when mitigating circumstances were present. In Singleton v. State, 783 So.2d 970 (Fla.2001), the defendant was convicted of first-degree murder. The defendant testified that after he had sex with the victim, she attempted to steal his wallet. When the defendant recovered the wallet, the victim picked up a knife and swung it at him. During the struggle to take the knife from her, Singleton stabbed the victim seven times, causing her death. The trial court found the aggravators of prior conviction *49 of a felony involving use of violence and heinous, atrocious or cruel (HAC). Unlike this case, the trial court in Singleton found some mitigation, including three statutory mitigators and nine nonstatutory mitigators. In Singleton, this Court upheld the death sentence in spite of the substantial mitigation. Unlike Singleton, Kormondy does not have the benefit of mitigation.
We have also found the sentence of death proportional in several other cases where two aggravators were found in the face of extensive mitigation. See Spencer v. State, 691 So.2d 1062, 1065 (Fla.1996) (affirming defendant's death sentence for killing his wife based on the presence of two aggravating factors, prior violent felony and HAC, despite the existence of two statutory mental mitigatorsextreme mental or emotional disturbance and impaired capacity to appreciate the criminality of conductas well as a number of nonstatutory mitigating circumstances); Heath v. State, 648 So.2d 660, 666 (Fla. 1994) (affirming defendant's death sentence based on the presence of two aggravatorsprior violent felony and murder committed during the course of a robberydespite the existence of the statutory mitigator, extreme mental or emotional disturbance); Lemon v. State, 456 So.2d 885, 888 (Fla.1984) (upholding imposition of the death penalty where defendant was convicted of stabbing a woman and the trial court found two aggravating factors HAC and a prior violent felony convictionand one mitigating factor, emotional disturbance). The sentence imposed in this case is proportional to other cases where similar aggravating circumstances have been found.

Trial Court's Sentencing Order
Kormondy next argues the trial court departed from this Court's decision in Kormondy v. State, 703 So.2d 454 (Fla.1997), by finding additional aggravation that was not argued, requested, or instructed on. Kormondy also argues the issue of premeditation was decided against the State in the prior appeal and should not have been considered by the trial judge.
Upon remand, lower courts are required to follow this Court's mandate. Judge Padovano, in Florida Appellate Practice, stated: "The decision of the appellate court on the point of law involved in the appeal is binding in the new trial, but otherwise, the lower tribunal is not restricted in making any legal or evidentiary ruling that may become necessary." Philip J. Padovano, Florida Appellate Practice, § 14.11 (1988). See, e.g., Ventura v. State, 794 So.2d 553 (Fla.2001) (finding the trial court improperly departed from Supreme Court's instructions by enlarging amount of time for the State to respond to motion), cert. denied, 535 U.S. 1098, 122 S.Ct. 2296, 152 L.Ed.2d 1054 (2002). The trial court's written findings of fact supporting both aggravating and mitigating circumstances should be in accord with the evidence presented at the new sentencing hearing.
In Kormondy's first appeal, we held that the evidence presented at trial was insufficient to establish the premeditation required to support a conviction for first-degree premeditated murder, but we found sufficient evidence to support felony murder. See Kormondy, 703 So.2d at 460. In addition, in remanding the case, this Court cautioned that a murder cannot be cold, calculated, and premeditated without any pretense of moral or legal justification if premeditation is not established. See id. at 463. Based on our prior decision, Kormondy now argues that the trial court erroneously revisited the issues of premeditation and witness elimination.
*50 Although the sentencing order is not a model of clarity, a close reading indicates the trial court found only two aggravators in this case: (1) previous conviction of a felony involving a threat of violence, and (2) a homicide committed while engaged in a burglary. The trial judge did not find the cold, calculated, and premeditated aggravator, the heinous, atrocious, or cruel aggravator, or the witness elimination aggravator as Kormondy contends. Although both the HAC aggravator and the witness elimination aggravator were found at Kormondy's original trial, the sentencing order does not indicate that they were found at this new sentencing proceeding.
The language that the defendant seems to take exception to is contained in the trial court's discussion of the second aggravating circumstance, murder committed during the course of a burglary, which states that the defendants entered into the victims' home with a premeditated design to commit robbery and burglary, avoid arrest, and eliminate witnesses. These statements are not needed to establish or support the aggravators found and are mere surplusage. However, the inclusion of this language is harmless because murder during the commission of burglary was established by the evidence beyond a reasonable doubt without reference to this additional language.
Kormondy also argues the court erred in its consideration of mitigating evidence and in writing an internally inconsistent sentencing order. Under section 921.141(3), Florida Statutes (2000), trial judges are required to consider and weigh all aggravation and mitigation offered by the parties and record their findings. The sentencing order reflects that the trial court in this case considered one statutory mitigator, that Kormondy's participation was minor, and four nonstatutory mitigators, including: (1) Kormondy should receive life since Hazen and Buffkin were given life sentences; (2) the killing was accidental; (3) Kormondy cooperated with law enforcement; and (4) Kormondy displayed good conduct during the penalty phase. Although the mitigation was rejected, the trial court discussed each of the mitigating factors argued by the defense. At the sentencing hearing the judge may have been somewhat inconsistent by first saying the statutory mitigator of minor participation had no weight then assigning it little weight. However, his written order reflects no inconsistency. The sentencing order indicates clearly and unambiguously that the trial judge did not find this defendant to be a minor participant in the crimes committed against the McAdamses.
In Zack v. State, 753 So.2d 9, 19 (Fla. 2000), we noted that "[a]s a matter of law, the court cannot refuse to consider relevant mitigating factors." We reviewed our directive in Campbell v. State, 571 So.2d 415 (Fla.1990),[1] quoting the pertinent portion as follows:
When addressing mitigating circumstances, the sentencing court must expressly evaluate in its sentencing order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The court must find as a mitigating circumstance each proposed factor that is mitigating in nature and has been reasonably *51 established by the greater weight of the evidence ....
Zack, 753 So.2d at 19 (citations omitted) (emphasis added) (quoting Campbell, 571 So.2d at 419). But we also noted in Zack that whether a mitigating factor has been proven by the evidence is a question of fact subject to the competent, substantial evidence standard, which requires that the facts be evident in the record. See Zack, 753 So.2d at 19; see also Cave v. State, 727 So.2d 227 (Fla.1998). The record clearly establishes that Kormondy was not a minor participant in either the burglary, the robbery, the rape, or the murder.
It is also clear from a reading of the sentencing order that the trial judge considered each of the nonstatutory mitigating circumstances that was argued by the defense. In the order, the trial court specifically outlined reasons for rejecting each of the proposed mitigators. The fact that a mitigator was not found and thus not given any weight is not a reason for reversal. See Trease v. State, 768 So.2d 1050 (Fla.2000). Kormondy's argument on this issue is also based on the trial court's unfortunate use of language concerning premeditation and witness elimination. We caution all trial judges to avoid using language that is not necessary to support particular findings and that may give a defendant the impression that the court has considered factors that have been found to be irrelevant by this Court. While the use of the disputed language here is clearly surplusage, such clarity may not exist under other circumstances.
The mitigating factors offered by the defense were not established on this record. Therefore, the trial court did not err in failing to find them as valid mitigation.

Evidence Negating Mitigation
Kormondy next argues the State improperly introduced evidence[2] of his flight and capture by a canine unit to rebut the "cooperation with authorities" mitigator he had offered. During the opening statement at the penalty phase, defense counsel Arnold told the jury that Kormondy would be presenting mitigation in the form of his cooperation with the police after his arrest which led to the arrest and prosecution of Buffkin and Hazen. The State, on the other hand, presented evidence to show that Kormondy's cooperation only came into play after the police arrested him and because he wanted to minimize his participation in the chain of events that led to the murder.
In order to chronologically illustrate the circumstances surrounding Kormondy's arrest and to present a complete story of Kormondy's cooperation with the authorities, the State presented the testimony of several law enforcement witnesses. Officers Cotton, Steele, Kilgore, and Rogers testified concerning their involvement in the surveillance, chase, capture, and use of a dog in the arrest of the defendant. Each officer's testimony was extremely limited in scope, and the total testimony consumed only twenty pages of a transcript of approximately 250 pages.
In Ellis v. State, 622 So.2d 991 (Fla.1993), this Court said that the State "shall be provided a full opportunity to rebut the existence of mitigating factors urged by [the defendant] Ellis and to introduce evidence tending to diminish their weight if they cannot be rebutted." Id. at 1001. We usually allow the State to rebut the mitigation offered by the defense, and we allow the defense to offer evidence to *52 rebut aggravation proposed by the State. See, e.g., Singleton v. State, 783 So.2d 970 (Fla.2001); Teffeteller v. Dugger, 734 So.2d 1009 (Fla.1999). This principle holds true even though the defense may present no witnesses and rely solely on cross-examination to support its proffered mitigation. In such a situation the State has the right to rely on the defense's opening statement of its mitigation as a basis for rebuttal.
As we noted in Teffeteller v. State, 495 So.2d 744 (Fla.1986), new penalty phase proceedings present unique problems:
One of the problems inherent in holding a resentencing proceeding is that the jury is required to render an advisory sentence of life or death without the benefit of having heard and seen all of the evidence presented during the guilt determination phase....
We note that this evidence [is] not used to relitigate the issue of appellant's guilt, but [is] used only to familiarize the jury with the underlying facts of the case.... We hold that it is within the sound discretion of the trial court during resentencing proceedings to allow the jury to hear or see probative evidence which will aid it in understanding the facts of the case in order that it may render an appropriate advisory sentence. We cannot expect jurors impaneled for capital sentencing proceedings to make wise and reasonable decisions in a vacuum.
Id. at 745. Given the circumstances inherent in resentencing, the trial court's decision to allow some factual development in this case was not error. The testimony offered was neither extensive nor cumulative. Without the chronological explanation of Kormondy's capture, the jury would not have been able to understand the circumstances of Kormondy's arrest nor make a reasoned decision concerning his proffered mitigation. Therefore, the trial court did not err in allowing the State to offer evidence that was intended to rebut and diminish mitigating evidence.

Right to Cross-Examine a Witness
Kormondy claims he was denied his constitutional right to cross-examine a witness when he attempted to impeach Mrs. McAdams' testimony by questioning her about a prior inconsistent deposition statement. After Mrs. McAdams testified that she was able to identify the people who attacked her, defense counsel asked her about statements concerning identity made at her deposition. Before she could answer the question, the State made an objection which was sustained. There was no explanation or proffer made at this point concerning what the defense was seeking with this question. Defense counsel then asked Mrs. McAdams if she had been able to identify Kormondy as one of the persons in her home. She responded that she had not seen his full face, but she could recognize some similar characteristics and features. She went on to answer affirmatively that his height, weight, and hair were familiar. The examination then ended after a brief question about her ability to recognize Hazen.
In Pomeranz v. State, 703 So.2d 465 (Fla.1997), this Court stated that a witness may be cross-examined and impeached by either party. Limitations on the examination of a particular witness are controlled in the sound discretion of the trial court, and the trial court's ruling in this area will only be reversed if the aggrieved party demonstrates an abuse of that discretion. See Sanders v. State, 707 So.2d 664 (Fla.1998). In this case, the defendant has not demonstrated an abuse of discretion. As the State argues, the defense made no attempt to establish through a proffer or other explanation that the trial court should not have sustained *53 the State's objection. The defense did not indicate what was being sought from the witness by the question nor that there was evidence that would demonstrate that Mrs. McAdams had misidentified her assailants. See Finney v. State, 660 So.2d 674, 684 (Fla.1995) (holding that without a proffer it is impossible for the appellate court to determine whether the trial court's ruling was erroneous and if erroneous what effect the error may have had on the result). Therefore, it cannot be determined from the record that the defendant was deprived of his opportunity to cross-examine or impeach the witness.

Victim Impact Evidence
Kormondy argues that the trial court allowed the State to present improper victim impact evidence to the jury. Both the caselaw from this Court and section 921.141(7), Florida Statutes (2000), allow for the introduction of victim impact evidence. Section 921.141(7) provides:
Once the prosecution has provided evidence of the existence of one or more aggravating circumstances as described in subsection (5), the prosecution may introduce, and subsequently argue, victim impact evidence. Such evidence shall be designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death. Characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as a part of victim impact evidence.
In Burns v. State, 699 So.2d 646, 653 (Fla.1997), we rejected the argument that victim impact evidence is irrelevant under Florida's sentencing statute because it does not go to any aggravator or to rebut any mitigator. See also Bonifay v. State, 680 So.2d 413, 419 (Fla.1996); Windom v. State, 656 So.2d 432, 439 (Fla.1995). In Payne v. Tennessee, 501 U.S. 808, 823, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court expressly rejected the argument that admitting such evidence violates equal protection, finding that victim impact evidence is not offered to encourage a comparison of victims but to "show instead each victim's `uniqueness as an individual human being,' whatever the jury might think the loss to the community resulting from his death might be."
Kormondy now finds objectionable the testimony of Mrs. McAdams, particularly her description of Mr. McAdams giving food to an elderly woman and helping a man whose car was repossessed. He complains of the victim's mother's testimony concerning the fact that Mr. McAdams cared for his younger adopted son, who had lost a leg below the knee after being hit by a car. Kormondy also complains of a longtime friend's testimony that Mr. McAdams protected her daughter, who was of a smaller stature than her playmates, by carrying her on his shoulders and calling her a "queen." According to Kormondy, such testimony exceeded statutory and constitutional limitations for such evidence and became a feature of the trial. No objections to this testimony were lodged in any of the three instances of which the defendant now complains. Therefore, this issue has not been properly preserved for appellate review. See Windom v. State, 656 So.2d 432, 438 (Fla.1995); Hardwick v. Dugger, 648 So.2d 100 (Fla.1994); Brown v. State, 596 So.2d 1026 (Fla.1992); Engle v. Dugger, 576 So.2d 696 (Fla.1991).
Moreover, this issue did not become such a feature of the sentencing proceeding so as to make its admission fundamental error. Kormondy misinterprets Windom as barring testimony about the effect the victim had on his community. In fact, Windom simply reemphasizes that *54 victim impact testimony, as outlined in section 921.141(7), Florida Statutes, is permissible, but is to be limited to the victim's uniqueness and the loss to the community caused by the victim's death. The evidence presented by the three witnesses in this case complied with the statutory guidelines and substantiated the State's contention that the victim was an outstanding member of the community, a devoted husband, and a loving son. Moreover, this testimony did not become a feature of the trial since it was minimalfour pages of Mrs. McAdams' thirty-four-page testimony; four pages of Gloria McAdams' six-page testimony; and the entire three pages of Kay Pavlock's testimony. Therefore, we find the evidence presented complied with both statutory and case law regarding victim impact evidence and find no error in its admission.

Apprendi Issue
Kormondy argues that this case should be governed by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, the United States Supreme Court held that, other than a prior conviction,[3] any fact that increases the punishment for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Kormondy argues that the absence of any notice of the aggravating circumstances that the State will present to the jury and the absence of specific jury findings of any aggravating circumstances offends due process and the proscription against cruel and unusual punishment under Apprendi.
Although we have previously held that the Supreme Court's decision in Apprendi was not applicable to death penalty cases, the Supreme Court recently ruled in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), that the principle of law announced in Apprendi had application in the death penalty context. In so holding, the Supreme Court found unconstitutional a death penalty scheme where the jury did not participate in the penalty phase of a capital trial. That, of course, is not the situation in Florida where the trial court and the jury are cosentencers under our capital scheme. See Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). While Ring makes Apprendi applicable to death penalty cases, Ring does not require either notice of the aggravating factors that the State will present at sentencing or a special verdict form indicating the aggravating factors found by the jury. See, e.g., Bottoson v. Moore, 833 So.2d 693 (Fla. 2002), cert. denied, ___ U.S. ___, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143 (Fla.2002), cert. denied, ___ U.S. ___, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). Because neither Apprendi nor Ring requires a finding that the Florida capital sentencing scheme is unconstitutional, we deny relief on this issue.

CONCLUSION
Based on the foregoing, we affirm the trial court's imposition of a sentence of death for the first-degree murder of Gary McAdams.
It is so ordered.
WELLS, PARIENTE, LEWIS and QUINCE, JJ., and HARDING, Senior Justice, concur.
*55 PARIENTE, J., concurs specially with an opinion.
ANSTEAD, C.J., and SHAW, Senior Justice, concur in result only.
PARIENTE, J., specially concurring.
I concur in the majority opinion in this case, but write separately to clarify my view of the effect of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), on the role of the jury in the decision of whether to impose the death penalty. In Ring, the Court held: "Capital defendants, no less than non-capital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Id. at 2432. Ring thus requires more than simply jury participation in the penalty phase of a capital trial, as the majority suggests. See majority op. at 54. In my view, the jury participation required in light of Ring must include, at a bare minimum, a unanimous finding of fact as to the existence of at least one aggravating circumstance.
However, I concur in the denial of relief pursuant to Ring because, even though the jury's death recommendation was nonunanimous, two of the aggravating circumstances found by the trial court rested on other convictions for crimes committed during the same criminal episode. Kormondy was found guilty of these other convictions in the guilt phase by a unanimous jury. In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis supplied.) The Supreme Court extended Apprendi to capital sentencing schemes in Ring. See 122 S.Ct. at 2443. Because none of the aggravating circumstances involved prior convictions, the Court in Ring was not called upon to address the Apprendi exception for prior convictions. See id. at 2437 n. 4.
In this case, the majority relies on the prior-conviction exception to Apprendi as an alternative ground for denial of relief. See majority op. at 54 n.3. This constitutes a proper basis for affirmance on this issue. See Anderson v. State, 841 So.2d 390 (Fla. 2003) (Pariente, J., concurring as to conviction and concurring in result only as to sentence); Israel v. State, 837 So.2d 381(Fla. 2002) (Pariente, J., concurring in result only).
NOTES
[1] This court receded from Campbell in Trease v. State, 768 So.2d 1050, 1055 (Fla.2000), to the extent that Campbell does not allow trial courts to give no weight to a mitigating factor supported by the record.
[2] Because this was a resentencing before a new jury, the State at a pretrial conference indicated it would put on witnesses at the sentencing hearing to summarize the evidence presented in the guilt phase of the trial. No objection was made to this strategy.
[3] It should be noted that contemporaneous with Kormondy's conviction for first-degree murder he was also convicted of other violent felonies, robbery and sexual battery. Additionally, the murder was committed during the course of a burglary. Thus, the sentence of death in this case could be imposed based on these convictions by the same jury.