# Supreme Court of Florida

_____

No. SC2021-1767
_____

**CHRISTIAN CRUZ,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 6, 2023

PER CURIAM.

Christian Cruz appeals his sentence of death, which was imposed by the trial court for the second time following this Court's reversal of his original death sentence "and remand for the limited purpose of requiring the trial court to perform a new sentencing evaluation and provide a new sentencing order." *See Cruz v. State*, 320 So. 3d 695, 731-32 (Fla. 2021). We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons we explain, we affirm Cruz's sentence of death.

# I. BACKGROUND

In 2019, Cruz was convicted of first-degree murder, burglary, robbery, and kidnapping and was sentenced to death for the murder. *Cruz*, 320 So. 3d at 710, 716. This Court summarized the relevant facts as follows:

> In 2013, Christian Cruz and codefendant Justen Charles were indicted for the first-degree murder of Christopher Jemery, as well as burglary while armed, robbery with a firearm, and kidnapping. Cruz and Charles were tried separately but before the same trial court. Charles' trial occurred after Cruz's trial but before Cruz's sentencing. The evidence presented at Cruz's trial showed that on April 26, 2013, Jemery was attacked in his Deltona apartment. The evening before the attack, both Cruz and Charles were together in an apartment in the vicinity of Jemery's apartment. Cruz and Charles were aware that the former resident of the apartment where Jemery was living sold drugs out of the apartment, and Cruz and Charles discussed Jemery's apartment the day before the murder.
>
> The evidence showed that both Cruz and Charles forcefully entered Jemery's apartment. The physical evidence obtained from the apartment showed that there was an assault and attack on Jemery. Blood throughout the apartment demonstrated that Jemery was beaten while inside the apartment. Bloody footprints matching the shoes of Cruz and Charles were found inside the apartment. One of the bedrooms appeared ransacked and had additional blood, the kitchen cabinets had been opened, and a television was taken from the apartment.
>
> Cruz and Charles then placed Jemery in the trunk of Jemery's rental car, drove him to a remote location, and shot him in the head. Jemery was found near the Sanford airport in Seminole County, Florida. Workers at

an industrial area saw what they thought was the body of a person lying on the ground in a field adjacent to their warehouse. Because the body lacked identification, the person was given the name of John Doe. John Doe was later identified as Christopher Jemery.

Upon first arrival at the field, emergency personnel made a notation that Jemery was bound with wire and duct tape on his arms and mouth, was alive but nonresponsive, and his breathing was very shallow. Medical examiner testimony would later reveal that Jemery was shot in the head and also sustained a number of injuries to his head, face, hands, and torso, including cuts, bruises, lacerations, and defensive wounds. His wrists showed what appeared to be tape residue from being bound with duct tape. Jemery initially survived the attack but succumbed to his injuries in a hospital within a day.

Evidence showed that the duct tape recovered from the area where Jemery was found matched the leftover roll of duct tape found in Jemery's apartment. A live .22 bullet was found on the floor of Jemery's apartment, which was the same caliber and manufacturer as the .22 shell casing found near Jemery's body. Cruz's fingerprint was found on a piece of duct tape recovered from Jemery's body. Cruz's DNA was found on a swab of blood taken from the front right kick panel and the right front door of Jemery's rental car. Cruz's fingerprint was also found on the Air Jordan shoe box found at Jemery's apartment and on Jemery's cell phone, which was recovered from his rental car. Jemery's rental car was not at his apartment and was later found backed into some bushes near a grocery store in Deltona. The evidence also showed that the same night Jemery was taken from his apartment, Cruz was seen on a bank's ATM surveillance camera using Jemery's bank card and personal identification number (PIN) to withdraw $440 cash from Jemery's account.

*Id.* at 705-06.

During the guilt phase of Cruz's trial, the State presented the testimony of 17 witnesses. The State did not, however, present at Cruz's trial 2 items of evidence that it did introduce at the trial of Charles: first, the testimony of Charles' girlfriend that she had seen Cruz with a .22 caliber firearm, and second, a stipulation between the State and Charles' trial counsel that Cruz was the shooter.

*Id.* at 708.

To establish the prior violent felony aggravator, the State presented evidence of a robbery of a Hungry Howie's committed by Cruz and Charles days after the murder in this case. At the conclusion of the penalty phase, the jury unanimously recommended that Cruz be sentenced to death. *Id.* at 710.

[T]he trial court followed the jury's recommendation and sentenced Cruz to death. The trial court found 5 aggravating factors: (1) Cruz was previously convicted of a felony involving the use or threat of violence to another person for the Hungry Howie's robbery committed shortly after murdering Jemery (great weight); (2) the first-degree murder was committed while Cruz was engaged in a robbery, burglary, or kidnapping, merged with the first-degree murder was committed for financial gain (great weight); (3) the first-degree murder was committed for the purpose of avoiding arrest (great weight); (4) the first-degree murder was especially heinous, atrocious, or cruel (great weight); and (5) the first-degree murder was committed in a cold, calculated, and premeditated manner (great weight). The trial court considered and found as proven all 37 of Cruz's proffered mitigators,

- 4 -

assigning slight weight to 24, moderate weight to 11, great weight to 1, and extraordinarily great weight to 1.

In its sentencing order, the trial court conducted an *Enmund*[n.4]-*Tison*[n.5] analysis, finding as follows:

> The jury found Mr. Cruz to be the individual who shot and killed Mr. Jemery. In Mr. Charles's case, the State abandoned any efforts to establish Mr. Charles as the shooter. The jury in Mr. Charles' case did not have to make a determination as to who the shooter was because of the State's concession. However, the jury in Mr. Charles' case did find him guilty of both, premeditated murder AND felony murder.
>
> Therefore, this court finds that Mr. Cruz in fact killed Mr. Jemery and no further analysis is needed.
>
> [N.4] *Enmund v. Florida*, 458 U.S. 782 (1982).
>
> [N.5] *Tison v. Arizona*, 481 U.S. 137 (1987).
>
> In the sentencing order, the trial court explained that he heard and considered evidence of the case in Cruz's and codefendant Charles' trials.

*Id.* at 710-11 (footnote omitted).

On appeal, we agreed with Cruz's argument that he was improperly sentenced to death based on extrarecord facts:

> In sentencing Cruz to death, the trial court relied on evidence from Charles' trial, specifically the testimony of Charles' girlfriend regarding seeing Cruz with a .22 caliber firearm, as well as the stipulation in Charles' trial that Cruz was the shooter. However, there is no competent, substantial evidence presented in Cruz's trial

- 5 -

> to support the jury's finding that Cruz was the shooter. We cannot determine what weight the trial judge gave to the finding that Cruz was the shooter or what part the nonrecord evidence from codefendant Charles' trial played in Cruz's sentence. Here, this was error that cannot be considered harmless.

*Id.* at 725. We thus overturned the death sentence "and remand[ed] for the limited purpose of resentencing by the trial court and a new sentencing order." *Id.* at 723. At that time, we declined to address Cruz's argument that his sentence was "disproportionate in comparison to other death sentences and Charles' life sentence." *Id.* We explained that there was no need to address comparative proportionality in light of our decision in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020), in which we receded from the judge-made requirement to review the comparative proportionality of death sentences as contrary to the conformity clause of article I, section 17 of the Florida Constitution. Because of the need for resentencing caused by the error of reliance on facts not in evidence, we also did not reach the issue of relative culpability in light of Charles's life sentence. *Id.*

On remand in 2020, aside from a slight change in weight to one aggravator and one mitigator—both of which were favorable to

Cruz—the trial court found and assigned the same weight to each aggravator and mitigator and again sentenced Cruz to death. The trial court decreased the weight it assigned to the cold, calculated, and premeditated aggravator from great to moderate and increased the weight it assigned to the "minor participation" mitigator from slight to moderate. This appeal follows.

## II. ANALYSIS

Cruz's sole challenge to his death sentence is that this Court's relative culpability review requires that the sentence be reduced to life imprisonment because his equally culpable codefendant, Charles, who was convicted of the same offenses and to whom the same aggravating factors were proven applicable, was sentenced to life imprisonment by the same judge. The State takes the position that when this Court in *Lawrence* receded from its obligation to conduct a comparative proportionality review, it also receded from its obligation to conduct a relative culpability analysis, and therefore Charles's sentence is irrelevant to Cruz's sentence. This dispute thus presents the threshold question, Does relative culpability review survive *Lawrence*?

This Court's formerly mandatory comparative proportionality

review that was eliminated in *Lawrence* involved consideration of circumstances present in a capital case and a qualitative comparison to other similar capital cases in order to determine whether the case being reviewed fell under the category of most aggravated and least mitigated of first-degree murders, *see, e.g.*, *Lebron v. State*, 982 So. 2d 649, 668 (Fla. 2008); *Porter v. State*, 564 So. 2d 1060, 1064 (Fla. 1990), "thereby assuring uniformity in the application of the sentence," *Anderson v. State*, 841 So. 2d 390, 408 (Fla. 2003). And in capital cases involving multiple defendants, this Court has performed an additional analysis—which has been described as an "aspect" of its comparative proportionality review— of a defendant's culpability relative to his codefendant(s). *See, e.g.*, *Shere v. Moore*, 830 So. 2d 56, 60-62 (Fla. 2002). Underlying this relative culpability review has been "the principle that equally culpable co-defendants should be treated alike in capital sentencing and receive equal punishment." *Id.* at 60.

In *Lawrence*, we held "that the conformity clause of article I, section 17 of the Florida Constitution[1] forbids this Court from

1. The conformity clause of article I, section 17 provides that "[t]he prohibition against cruel or unusual punishment, and the

- 8 -

analyzing death sentences for comparative proportionality in the absence of a statute establishing that review." *Lawrence*, 308 So. 3d at 545. *Lawrence* thus receded from precedent that required death sentences to be reviewed "for comparative proportionality." *Id.* at 552. And *Lawrence* "eliminate[d] comparative proportionality review from the scope of [this Court's] appellate review set forth in [Florida Rule of Appellate Procedure] 9.142(a)(5)." *Id.*

Cruz presents several points of argument in favor of his position. He asserts that our relative culpability review survived *Lawrence* because *Lawrence* dealt exclusively with the imposition of comparative proportionality review and did not address relative culpability review. But nearly every time this Court has addressed relative culpability review, it has either described it as a part of its formerly mandatory comparative proportionality review or addressed it as such. *E.g.*, *Truehill v. State*, 358 So. 3d 1167, 1186 (Fla. 2022) (describing, post-*Lawrence*, a relative culpability claim

prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." Art. I, § 17, Fla. Const.

as a "proportionality claim" and "claim of relative proportionality"); *Bargo v. State*, 331 So. 3d 653, 665 (Fla. 2021) (discussing proportionality and relative culpability under the joint heading "Proportionality – Relative Culpability"), *cert. denied*, 143 S. Ct. 193 (2022); *Hannon v. State*, 228 So. 3d 505, 509-11 (Fla. 2017) (discussing the relative culpability analysis as related to a "proportionality claim" and under the heading "Proportionality"); *Truehill v. State*, 211 So. 3d 930, 959 (Fla. 2017) (addressing relative culpability as part of this Court's then-mandatory comparative proportionality review despite the fact that defendant did not raise a relative culpability or comparative proportionality claim); *Jeffries v. State*, 222 So. 3d 538, 547 (Fla. 2017) (conducting a relative culpability analysis under the heading "Proportionality" and stating that this Court "may also consider relative culpability as part of our mandatory proportionality review"); *McCloud v. State*, 208 So. 3d 668, 688 (Fla. 2016) (describing "a full proportionality review" as "including a relative culpability analysis"); *Cannon v. State*, 180 So. 3d 1023, 1041 (Fla. 2015) (analyzing a relative culpability claim under the heading "Proportionality," addressing it as a claim that defendant's sentence is "disproportionate," and

- 10 -

referring to it in terms of "comparing the case to other capital cases with similar mitigating and aggravating circumstances"); *Fletcher v. State*, 168 So. 3d 186, 221 (Fla. 2015) (conducting a relative culpability analysis under the heading of "Proportionality" and in conjunction with a traditional comparative proportionality analysis); *Brooks v. State*, 175 So. 3d 204, 235 (Fla. 2015) (addressing a relative culpability claim under the heading "Proportionality"); *Carr v. State*, 156 So. 3d 1052, 1070 n.13 (Fla. 2015) (noting under the heading "Proportionality" that defendant also raised a relative culpability claim); *Martin v. State*, 151 So. 3d 1184, 1198 (Fla. 2014) (addressing relative culpability as part of traditional comparative proportionality review); *Wright v. State*, 19 So. 3d 277, 305 (Fla. 2009) ("[P]roportionality review requires us to consider the codefendant's sentence."); *Hernandez v. State*, 4 So. 3d 642, 671 (Fla. 2009) (addressing relative culpability claim under the "Proportionality" heading); *Brooks v. State*, 918 So. 2d 181, 210 (Fla. 2005) (same); *Kormondy v. State*, 845 So. 2d 41, 47 (Fla. 2003) (stating that an analysis of comparative proportionality, "of necessity, includes the relative culpability of each codefendant"); *Lugo v. State*, 845 So. 2d 74, 117-19 (Fla. 2003) (addressing relative

culpability claim under the "Proportionality" heading and as part of traditional comparative proportionality review); *Shere*, 830 So. 2d at 62 (noting that "relative culpability" is an "aspect of proportionality"); *Hertz v. State*, 803 So. 2d 629, 652 (Fla. 2001) (addressing relative culpability under the "Proportionality" heading); *Brown v. State*, 721 So. 2d 274, 282 (Fla. 1998) (same); *Henyard v. State*, 689 So. 2d 239, 254 (Fla. 1996) ("[T]hus, an equally or more culpable codefendant's sentence is relevant to a proportionality analysis." (citing *Cardona v. State*, 641 So. 2d 361 (Fla. 1994))); *see also McCloud*, 208 So. 3d at 693 n.6 (Canady J., concurring in part and dissenting in part) (describing relative culpability as "an aspect of [this Court's] comparative proportionality review"); *Shere*, 830 So. 2d at 64 (Anstead, C.J., concurring in part and dissenting in part) ("As a corollary to this analysis of comparing the circumstances of a case in which death had been imposed to others with a similar sentence, the Court also performs an additional analysis of relative culpability in cases where more than one defendant was involved in the commission of the killing."). *But see Wade v. State*, 41 So. 3d 857, 867, 879 (Fla. 2010) (considering defendant's relative culpability claim prior to and separate from traditional, comparative

proportionality); *Cole v. State*, 36 So. 3d 597, 610 (Fla. 2010) (same); *Caballero v. State*, 851 So. 2d 655, 662-63 (Fla. 2003) (same).

Cruz cites *Palmes v. Wainwright*, 460 So. 2d 362, 364 (Fla. 1984), for the proposition that this Court views comparative proportionality review and relative culpability review as entirely separate matters, relying on the following statement in the opinion: "Proportionality review compares the sentence of death with other cases in which a sentence of death was approved or disapproved. Disparate treatment of accomplices which may be a ground of mitigation is an entirely separate matter." But when read in context, it is clear that this statement cannot be interpreted literally to mean that relative culpability review does not fall under the umbrella of proportionality review.

In his habeas petition, Palmes asserted that this Court failed to conduct a proportionality review in his direct appeal affirming his death sentence. 460 So. 2d at 364. Palmes "argue[d] that the state's chief witness against him was equally as guilty of the murder as he was and that her immunization from prosecution constituted such a disparity of treatment of equally guilty accomplices as to

- 13 -

violate the principle of proportionality." *Id.* This Court rejected Palmes's argument on the ground that it was procedurally barred, having been raised in his direct appeal and previous postconviction motion, and noted that "the original affirmance of the sentence of death implicitly found the sentence appropriate to the crime under proportionality principles." *Id.* Only then did the Court make the statement that "[d]isparate treatment of accomplices which may be a ground of mitigation is an entirely separate matter." When taken in context, this statement cannot support Cruz's position, because before the statement was made, the Court had already confirmed that Palmes's claim of disparate sentencing based on relative culpability was previously resolved, implicitly and "under proportionality principles." It would be illogical to conclude that relative culpability is an entirely separate matter from proportionality yet able to be implicitly resolved by a determination that a death sentence is proportional.

This Court's lengthy history of overwhelmingly referring to and treating relative culpability as a part of, "a corollary of," or intertwined with its traditional comparative proportionality review as well as its explicit identification of a relative culpability analysis

as a necessary component of comparative proportionality in multi-defendant capital cases, *e.g.*, *McCloud*, 208 So. 3d at 688; *Kormondy*, 845 So. 2d at 47, makes it clear that relative culpability review was indeed a part of its comparative proportionality review. Consequently, this Court's elimination of comparative proportionality review in *Lawrence* also resulted in the elimination of its relative culpability review. Here, that means that Charles's life sentence is irrelevant to and has no bearing on Cruz's death sentence.

Cruz argues that the conformity clause in article I, section 17 does not prohibit this Court from conducting a relative culpability review because *Lawrence* was exclusively premised on *Pulley v. Harris*, 465 U.S. 37 (1984), which held that comparative proportionality review is not constitutionally required but did not address relative culpability, and there is no direct United States Supreme Court opinion prohibiting relative culpability review under the Eighth Amendment. This argument fails for the same reason as the previous argument: our relative culpability review is a corollary of our obsolete comparative proportionality review. Under *Pulley*, as

- 15 -

a component of comparative proportionality review, a relative culpability review is not constitutionally required.

Cruz also argues that his death sentence violates his right to equal protection under the United States and Florida Constitutions, in light of Charles's life sentence. But "co-defendants have no enforceable right to have sentences that are precisely congruent with one another." *United States v. Haehle*, 227 F.3d 857, 860 (7th Cir. 2000). And it has been recognized that "[a] criminal sentence violates the Equal Protection Clause only if it reflects disparate treatment of similarly situated defendants lacking any rational basis." *Peters v. State*, 128 So. 3d 832, 853 (Fla. 4th DCA 2013) (quoting *United States v. Pierce*, 409 F.3d 228, 234 (4th Cir. 2005)).

One potential "rational basis" for imposing different sentences on codefendants who appear to share equal culpability is the mitigation, or the lack thereof, applicable to each codefendant. Mitigation is "a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). "[T]he sentencer in capital cases must be permitted to consider any relevant mitigating factor," *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), "may not refuse to consider

- 16 -

any mitigating evidence," *Butler v. State*, 842 So. 2d 817, 831 (Fla. 2003), and "must expressly evaluate each statutory and nonstatutory mitigating circumstance proposed by the defendant," *Ault v. State*, 53 So. 3d 175, 186 (Fla. 2010). Because a capital sentencing court is required to give due consideration to each mitigating circumstance that exists relative to each individual defendant, there can be no constitutional requirement that capital codefendants who appear equally culpable on the facts of a case receive the same sentence. This individualized consideration of mitigation has been described as "[t]he core substantive ingredient" of a capital defendant's right to individualized sentencing. *Puiatti v. McNeil*, 626 F.3d 1283, 1314 (11th Cir. 2010) ("The core substantive ingredient in the constitutional right to an 'individualized sentencing' is mitigation evidence relevant to the capital defendant as an individual or unique person . . . .").

Like mitigation, aggravation may provide a "rational basis" for imposing different sentences on codefendants who appear to be equally culpable on the facts of a murder. But this Court's relative culpability review never required consideration of the aggravating factors or mitigating circumstances applicable to each codefendant.

Even where codefendants had equal roles in a murder, it would be a farce to consider them equally culpable if, for example, only a single aggravator were applicable to one codefendant but numerous aggravators were proven as to the other. Yet this Court has almost exclusively declined to consider any fact in its relative culpability analyses aside from a defendant's degree of participation in the murder.

The fact that this Court's relative culpability review failed to require consideration of "constitutionally indispensable" mitigation or aggravation—also a "constitutionally indispensable" part of capital sentencing, *see, e.g.*, *Sattazahn v. Pennsylvania*, 537 U.S. 101, 111 (2003)—further supports our conclusion that relative culpability review is neither constitutionally required nor consistent with ensuring that a constitutional capital sentence was rendered.

Cruz also attempts to invoke the Due Process Clause, arguing that "the unequal treatment of equally culpable defendants in a capital case violates due process," Initial Brief of Appellant at 69, "because the entire purpose of the Due Process Clause is to prevent arbitrary deprivations of liberty or property," *id.* at 70. But this argument makes no sense if disparate sentences are imposed based

on incongruent mitigation or aggravation or both.  The imposition of a lesser sentence upon a defendant with more mitigation or less aggravation than his codefendant(s) certainly cannot be considered "arbitrary."  And there is no merit to Cruz's assertion that the conformity clause in article I, section 17 does not prevent this Court from continuing to conduct its relative culpability review because there is no corresponding conformity clause for due process in the Florida Constitution.

> It is no more tenable to skirt the conformity clause by proclaiming that comparative proportionality review is required by the due process clause rather than by the prohibition on cruel and unusual punishments.  Under the federal Constitution, "the Eighth Amendment's Cruel and Unusual Punishments Clause [is] made applicable to the States by the Due Process Clause of the Fourteenth Amendment."  *Graham* [*v. Florida*, 560 U.S. 48, 53 (2010)].  The prohibition on cruel and unusual punishments thus is a particular aspect of due process.  And the conformity clause expressly limits the authority of this Court with respect to that aspect of due process.  To conclude otherwise is to treat the conformity clause as meaningless for all practical purposes.

*Yacob v. State*, 136 So. 3d 539, 562 (Fla. 2014) (Canady, J., concurring in part and dissenting in part) (first alteration in original).

Cruz's other arguments—*e.g.*, that relative culpability review is part of this Court's obligatory sufficiency of the evidence review in capital cases, and that the State's argument that relative culpability had been abandoned was not properly preserved for review—are without merit and do not warrant further discussion.

## III. CONCLUSION

This Court's relative culpability review was a corollary of its comparative proportionality review, which was determined in *Lawrence* to be violative of the Florida Constitution. As an integrated part of comparative proportionality review, relative culpability review was rendered obsolete by the *Lawrence* decision, and it cannot now provide a basis for vacating Cruz's death sentence, which we hereby affirm.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., dissents with an opinion.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

In 2020, during a series of significant changes by this Court to Florida's death penalty jurisprudence, I strenuously dissented to the elimination of comparative proportionality review—which I described as "the most consequential step yet in dismantling the reasonable safeguards contained within Florida's death penalty jurisprudence." *Lawrence v. State*, 308 So. 3d 544, 552-53 (Fla. 2020) (Labarga, J., dissenting).

Today, I reiterate my dissent as the majority expressly eliminates relative proportionality review as "a corollary of our obsolete comparative proportionality review." Majority op. at 15. I fundamentally disagree with the majority's view that the conformity clause prohibits this Court from conducting proportionality review as a part of its review of death penalty cases. Indeed, I view proportionality review as being consistent with the Eighth Amendment prohibition of arbitrary death sentences.

Surely, in a state that leads the nation with thirty exonerations of individuals from death row, every reasonable safeguard should be retained in this Court's toolkit when reviewing

death sentences to ensure that the death penalty is reserved for the most aggravated and least mitigated of murders.[2]

I respectfully dissent.

An Appeal from the Circuit Court in and for Volusia County,
    Raul A. Zambrano, Judge – 642013CF102943XXXADL

J. Rafael Rodriguez of Law Offices of J. Rafael Rodriguez, Miami, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Patrick Bobek, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee

---

2. *See* Death Penalty Information Center, https://deathpenaltyinfo.org/state-and-federal-info/state-by-state/florida (last visited June 14, 2023).